IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHANNA NEWMAN, | ) | Civil Action No. 2:20-cv-00204-MRH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| POINT PARK UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | Filed Electronically |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT POINT PARK UNIVERSITY'S
MOTION TO DISMISS THE AMENDED COMPLAINT IN ITS ENTIRETY**

Plaintiff, by and through undersigned counsel, files this Response in Opposition to Defendant Point Park University's Motion to Dismiss the Amended Complaint in its Entirety, stating as follows:

1. Plaintiff filed the Complaint in State Court and Defendant removed it to this Court. ECF 1. Plaintiff admits that she is a professor and Department Chair. The removed Complaint is moot as Plaintiff filed an Amended Complaint (ECF 15) which is the operative pleading.

2. Plaintiff admits only that she filed an Amended Complaint (ECF Doc. 15). The remainder of Paragraph 2 consists of conclusions of law to which no response is required. To the extent a response is required the averments in Paragraph 2 are denied for the reasons set forth in Plaintiff's Brief in Oppositions (ECF 24).

3. The averments in Paragraph 3 constitute conclusions of law to which no response is required. By way of further answer, Defendant does not raise any failure to comport with Federal Rules of Civil Procedure in its Brief in Support. To the extent a response is required the averments in Paragraph 3 are denied.

4. Paragraph 4 is denied as stated. The adverse actions at issue include, but are not limited to, that Dr. Newman was removed from teaching her classes in the middle of the semester, she was removed as Chair of the HSS Department and replaced by a male who did not engage in protected activity, Point Park canceled her Spring 2019 400-level course, barred her from her office, disabled her access to email, interfered with her assignment of courses in the Department, preempted a scheduled department meeting to address the perils of advocacy and activism at the University under the guise of social justice, ordered surveillance by a security guard when she was permitted on one occasion to return to her office to retrieve materials for her defense, accused her of multiple Title IX violations without proper justification, subjected her to repeated workplace investigations and increased scrutiny, failed to conduct a timely investigation of her discrimination complaints even though it promised to do so, and decreased her autonomy as Chair when it effectively forced Dr. Newman for the foreseeable future to assign Dr. Ross, an alleged harasser of Dr. Newman located in another department, to teach a course outside his area of expertise in her Department even though he lacks the minimum degree required (a Masters) in the field. Am. Compl., ¶ 423. Plaintiff remains subjected to (a) reduction in academic freedom in which Dr. Ross played a role (¶¶ 352-381) and another unusual limitation which the administration foisted on her based on an anonymous complaint (¶¶ 392-399), (b) prey to unsubstantiated charges, (c) degradation of her faculty and chair roles, (d) excessive scrutiny, and (e) shunning (¶¶ 386-388), as well as (f) a hostile work environment that the administration condones. Nor has PPU trained against the anti-Semitism and anti-Zionism that have caused Plaintiff so much damage and distress. *Id.*, ¶¶ 409-412. The Administration found the word "Jews" problematic in the title of the proposed course and forced her to change it or cancel. *Id.*, ¶¶ 392-399. Defendant discriminated and retaliated against Plaintiff

and subjected her to a hostile environment. Counts I-XII. Defendant violated her academic freedom, breached its own policies on Title IX and anti-discrimination, and breached a mediation agreement. Counts XIII-XVII. Plaintiff further brings claims for negligent supervision and intentional infliction of emotional distress. Counts XVIII-XIX.

    5.      Plaintiff admits the averments set forth in Paragraph 5.

    6.      Paragraph 6 is denied. A plaintiff does not have to plead facts establishing a prima facie case under McDonnell Douglas to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). That framework defines the evidentiary burden at trial (or summary judgment) of a case on circumstantial proofs; it does not establish any special pleading requirements for discrimination. *Id.* At the motion to dismiss, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). The Amended Complaint meets this standard. *See* ECF15. Plaintiff incorporates her Brief in Opposition.

    7.      Paragraph 7 is denied as stated. In holding that a paid suspension "without more" could not be an adverse employment action, *Jones v. SEPTA*, 796 F.3d 323, 32-26 (3d Cir. 2015), left the door open to certain circumstances where a paid suspension plus additional evidence can be an adverse employment action. *Thourot v. Monroe Career & Tech. Inst.*, 2016 U.S. Dist. LEXIS 142962, at *14-15 (M.D.Pa. Oct. 17, 2016); *see also Vay v. Huston*, No. CV 14-769, 2016 WL 7324596, at *12–13 (W.D. Pa. Dec. 16, 2016) (a jury could find that paid suspension constituted an adverse employment action). Plaintiff incorporates her Brief in Opposition.

    8.      Paragraph 8 is denied for the reasons set forth in Paragraph 7. In addition, *Jones* does not apply to retaliation claims. *Thourot*, 2016 U.S. Dist. LEXIS 142962, at *14-15.

9. Paragraph 9 is denied. The causal connection is established based on Plaintiff's allegations of timing, antagonism, and pretext. Plaintiff incorporates her Brief in Opposition, Section III(B).

10. Paragraph 10 is denied. On a motion to dismiss, "no showing of proof is necessary" and "even if the record ultimately produced no evidence of temporal proximity suggestive of retaliation, that would not necessarily be fatal to [a plaintiff's] claim." *Connelly*, 809 F.3d at 792 n.11 (citing *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d Cir.1993)) ("The mere passage of time is not legally conclusive proof against retaliation"). "Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee, or other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole." *Id.* (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007)).

11. Paragraph 11 is denied as stated. Dr. Newman engaged in protected activity prior to her October 2018 suspension when she complained to Point Park of the anti-Semitic activities of Drs. Ross and Hines and the SJS program, Dr. A's harassment of her for which she filed a Title IX charge in December 2017, and Dr. Hines' sexist behavior in 2014. Compl. ¶¶ 56-59, 248-252, 271, 317, 319, 320. A Jury could find that following Dr. Newman's Title IX complaint the first opportunity Point Park had to retaliate against her was when it received a complaint in October 2018. *See Lipschultz v. Holy Family Univ.*, 2017 U.S. Dist. LEXIS 23476, *21-24(E.D. Pa. Feb. 17, 2017) (finding employer waited until the first opportunity it had to retaliate against plaintiff 14 months later

when it fulfilled its requirements under a settlement agreement).

After Dr. Newman's complaints, Dr. Ross and Hines were antagonistic to her including having her removed as GCS Coordinator, opposed her as Chair, and their hostility persisted into 2018. Compl. ¶¶ 38, 73. In addition, the October 2018 student complainant – Dr. Hines' advisee and Dr. Ross' colleague in the BDS movement – was encouraged to file a Title IX charge against Dr. Newman by Drs. Ross and Hines who improperly publicized the confidential charge to others in the Administration. *Id.*, ¶¶ 82, 217-18, 220-22, 329-31. At the time, Dr. Newman informed Ms. Stefanko that the empty Title IX charge was a "set-up" by Drs. Ross and Hines. *Id.*, ¶ 90-92. Such ongoing antagonism supports Plaintiff's causal connection. *See Connelly*, 809 F.3d at 792.

12. Paragraph 12 is denied as a conclusion of law. Plaintiff incorporates her Brief in Opposition, Section III(A)(4).

13. Paragraph 13 regarding Plaintiff's hostile work environment claims is admitted.

14. Paragraph 14 is denied. Plaintiff incorporates the discussion of her hostile work environment claims in her Brief in Opposition, Section III(B).

15. Paragraph 15 is denied. With PPU's support, Drs. Ross and Hines advocate militant, hateful, and anti-Semitic/anti-Israel views inside and outside the classroom including the economic, academic, and cultural boycott and the racist claim that Israel is an apartheid state. Compl. ¶¶ 19-23, 29-32, 42-44, 47, 228-230. Plaintiff repeatedly expressed her opposition to these teachings. *Id.*, ¶¶ 56, 58, 178, 343-44. Drs. Ross and Hines have boycotted Dr. Newman having her removed as GCS Coordinator, ¶ 38, opposed her Chair candidacy, ¶ 53, and placed the Social Justice program in a different department. *Id.*, ¶ 64. In October 2018, a student under the influence of Drs. Ross and Hines and involved in the BDS movement falsely accused Dr. Newman of a Title IX violation. *Id.*,

¶¶ 79, 82, 83, 326.  Immediately prior to filing the charge, the student consulted with both Drs. Ross and Hines who improperly publicized the charge.  *Id.*, ¶¶ 217-18.  This was the first time nationally that BDS had used a Title IX sexual harassment charge against a Jewish and/or Israeli professor.  *Id.*, ¶¶ 134-135.  Without notice, PPU immediately suspended and banned Dr. Newman although the University knew less drastic measures were available.  *Id.*, ¶¶ 164, 170-75.

On October 16, 2018, the day Dr. Newman was suspended, current and former students including the complainant conducted an electronic witch hunt to implore others to "bear witness" against her.  Compl. ¶¶ 188-202.  Ms. McClelland ignored Dr. Newman's report of the rape, made an anti-Semitic remark to staff, and joked with Dr. Hines and others about Dr. Newman's suspension.  *Id.*, ¶ 154.  Prior to the adjudication clearing Dr. Newman, PPU replaced her as Chair (with Robbins a promoter of Ross), cancelled her Spring 2019 course – a requirement for the GCS major – and funneled her students to Dr. Ross's 100-level social justice course.

In early December 2018, Dr. Newman made a complaint of race and national origin discrimination.  PPU pledged to conduct an investigation in accordance with anti-discrimination policies but it failed to do so.  Compl. ¶ 288.  In January 2019, the student newspaper published an article critical of Dr. Newman in which an assistant provost gave credence to the Title IX accusation against her,[1] blamed her for the effect on students from her removal, and claimed this cheated them financially – an anti-Semitic trope.  *Id.*, ¶ 289-91.  In February 2019, three or four students filed another Title IX charge against her.  *Id.*, ¶¶ 304-05.  PPU refused to provide any details about that

---

[1] A "failure to quell rumors may be a factor to be considered in determining whether a hostile work environment exists."  *Swanson v. Livingston Cty.*, 270 F. Supp. 2d 887, 895 (E.D. Mich. 2003), aff'd, 121 F. App'x 80 (6th Cir. 2005) (citing *Spain v. Gallegos*, 26 F.3d 439 (3d Cir. 1994), and *Jew v. University of Iowa*, 749 F.Supp. 946 (S.D. Iowa 1990)).

charge which to date has not been withdrawn. *Id.*

Students have shunned Dr. Newman by evading her as a teacher and advisor. Some who took the Spring 2019 course acted disrespectfully. With PPU's consent some were allowed to graduate without taking her required course.[2] *Id.*, ¶¶ 322-26. PPU had an associate provost attend a routine meeting with a student and Dr. Newman. Faculty disrespected Dr. Newman by going around her as Chair for sabbaticals and course assignments. In September 2019, PPU abruptly ended participation in the mediation attended by Plaintiff and her counsel because she was under yet another investigation. *Id.*, ¶¶ 594-97. In November 2019, PPU settled a grievance initiated by Dr. Ross against Dr. Newman undermining her authority to choose qualified instructors.[3] The Administration found the word "Jews" problematic in the title of the proposed course and forced her to change it or cancel. *Id.*, ¶¶ 392-399. The number enrolling in her courses has decreased dramatically, she has lost control over the majoring students in the Department, and her scheduling and the direction of the curriculum continue to be undermined. *Id.*, ¶¶ 323-26. Plaintiff incorporates the discussion of her hostile work environment claims in her Brief in Opposition, Section III(B).

16. Paragraph 16 is denied. Shunning and ostracism can support a hostile work environment claim where as here it impacted the terms and conditions of employment. *See EEOC v. Wyeth*, 302 F.Supp.2d 1041, 1070-1 (N.D. Iowa 2004) (shunning of employee forced to work

---

[2] Shunning and ostracism can support a hostile work environment claim where as here it impacted the terms and conditions of employment. *See EEOC v. Wyeth*, 302 F.Supp.2d 1041, 1070-1 (N.D. Iowa 2004) (shunning of employee forced to work alone, thereby increasing workload, led to factual issue whether she suffered an adverse employment action).

[3] The Jury may find PPU's acquiescence to Dr. Ross against Plaintiff, its manager, went against standard practice and point to an inference of discrimination. *Colgan v. Fischer Scientific*, 935 F.2d 1407, 1422-23 (3d Cir. 1991).

alone, thereby increasing workload, led to factual issue whether she suffered an adverse employment action). Plaintiff incorporates the discussion of her hostile work environment claims in her Brief in Opposition, Section III(B).

17. Paragraph 17 is a conclusion of law to which no response is required. If a response is deemed required, that paragraph is denied. Plaintiff incorporates the discussion of her hostile work environment claims in her Brief in Opposition, Section III(B).

18. Paragraph 18 is denied. Plaintiff asserts breach of contract claims based on Defendant's violations of its own workplace policies which are outside the CBA. Defendant has the burden to prove the asserted affirmative defense and can not prove it in a response to a motion to dismiss. Plaintiff incorporates the discussion of her breach of contract claims in her Brief in Opposition, Section III(C)-(E).

19. Paragraph 19 is denied. As Department Chair during the relevant period, Dr. Newman was considered an academic administrator not covered by the Collective Bargaining Agreement between Point Park and the Newspaper Guild of Pittsburgh/Communication Workers of America, Local 38061, AFLCIO, CLC. Am. Compl., ¶ 118. Plaintiff's breach of contract claims are not based on the CBA; they are based on Defendant's violation of its policies.

20. Paragraph 20 is denied as a conclusion of law. To the extent a response is deemed required, Paragraph 20 is denied for the reasons set forth in Plaintiff's Opposition Brief incorporated herein. Plaintiff's breach of contract claims are not based on the CBA; they are based on Defendant's violation of its policies. As a result, preemption does not apply to the facts alleged in the Amended Complaint.

21. Paragraph 21 is denied as a conclusion of law. To the extent a response is deemed

required, Paragraph 21 is denied for the reasons set forth in Plaintiff's Opposition Brief incorporated herein.

22. Paragraph 22 is admitted.

23. Paragraph 23 is a conclusion of law to which no response is required.

24. Paragraph 24 is a conclusion of law to which no response is required. To the extent a response is deemed required, Paragraph 24 is denied for the reasons set forth in Plaintiff's Opposition Brief incorporated herein. In addition, contrary to Defendant's argument, Plaintiff pled that the Title IX Policy and the Policy Prohibiting Sexual Misconduct applied to her and constituted a valid contract. Compl. ¶¶ 551-54, 584. Under Pennsylvania law, the provisions of an employee handbook setting forth specific workplace procedures give rise to a unilateral contract between the employer and the employee. *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 939 (Pa. Super. 2011). Failure to adhere to personnel policies constitutes a viable breach. *Braun*, 24 A.3d at 958-9. Dr. Newman alleged that Point Park communicated to her certain rights and procedures in the policies at issue under which she performed her duties, and thereby making an enforceable contract. *Id.* PPU's failure to follow those policies, in turn, gives rise to her breach of contract claims. *See id.* Courts have "recognized that where a claim for breach of contract is grounded on conduct other than the alleged discriminatory conduct, that claim is not barred by the PHRA." *Belverena v. Cent. Parking Sys., Inc.*, 2005 WL 2850343, at *2 (E.D. Pa. Oct. 31, 2005) (citing *Brennan v. National Telephone Directory Corp.*, 850 F.Supp. 331, 344-45 (E.D. Pa. 1994); *Deramo v. Consolidated Rail Corp.*, 607 F.Supp. 100 (E.D. Pa. 1985) (in age discrimination plaintiff's breach of contract claim was not preempted by the PHRA)). Because the breaches in Counts XIII and XVI are grounded on violations of specific provisions of policies and not solely on discriminatory conduct, Plaintiff's

claims are not preempted. *See Belverena*, 2005 WL 2850343, at *2 (breach of contract claim not preempted where based on implied contract to provide warning prior to termination); *Brennan*, 850 F.Supp. at 344-45 (breach of contract claim not preempted by PHRA where based on "defendants' acts of firing plaintiff without following their own established procedures and policies"); *Deramo*, 607 F.Supp. at 102 (breach of contract claim not preempted by the PHRA to the extent it was predicated on a detrimental reliance theory).

25. Paragraph 25 is a conclusion of law to which no response is required.

26. Paragraph 26 is admitted.

27. Paragraph 27 is denied. On May 24, 2019, the Parties entered into an Agreement to Mediate and "agreed to participate in a Mediation ('Mediation') with Carole Katz as mediator." Compl. ¶¶ 594-95. Point Park breached a duty imposed by the Agreement to Mediate at the third scheduled session when it declined to participate. *Id.* ¶¶ 596-97. Dr. Newman and her counsel sat in Point Park's lawyer's offices for hours. *Id.*, ¶ 598. Later, PPU announced that it stopped participating due to a new undefined investigation of Dr. Newman. *Id.*, ¶¶ 599-600. As a result of the breach, Dr. Newman suffered damages including payment for mediator fees and attorney's fees. *Id.*, ¶ 601. Plaintiff has stated a plausible claim for breach of the Agreement to Mediate. *See Batoff v. Charbonneau*, 130 F. Supp. 3d 957, 965–67 (E.D. Pa. 2015); *Bethlehem Area Sch. Dist. v. Zhou*, 2012 WL 930998, at *1-3 (E.D. Pa. Mar. 20, 2012).

28. Paragraph 28 is a conclusion of law to which no response is required. To the extent a response is deemed required, Paragraph 28 is denied for the reasons stated in Plaintiff's Brief in Opposition incorporated herein.

29. Paragraph 29 is a conclusion of law to which no response is required. To the extent

a response is deemed required, Paragraph 29 is denied for the reasons stated in Plaintiff's Brief in Opposition incorporated herein.

30. Paragraph 30 is a conclusion of law to which no response is required. To the extent a response is deemed required, Paragraph 30 is denied for the reasons stated in Plaintiff's Brief in Opposition incorporated herein including that the negligent supervision is not preempted by the PHRA.

31. Paragraph 31 is admitted.

32. Paragraph 32 is a conclusion of law to which no response is required. To the extent a response is deemed required, Paragraph 32 is denied for the reasons stated in Plaintiff's Brief in Opposition incorporated herein. Claims for intentional infliction of emotional distress based on racial or sexual harassment are not barred by Worker's Compensation Act under the personal animus exception. *Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 561 (E.D. Pa. 2013);*Williams v. U.S. Airways, Inc.*, No. CIV.A. 06-4797, 2007 WL 2667981, at *2 (E.D. Pa. Sept. 5, 2007)*; Price v. Philadelphia Elec. Co.*, 790 F.Supp. 97 (E.D.Pa. 1992). Here, Plaintiff alleges intentional infliction of emotional distress because she has been targeted for adverse treatment by faculty, students, and Point Park on account of her Jewish religion, ancestry, and ethnicity and Israeli national origin as well as for retaliatory reasons. Compl. ¶¶ 13-15, 315.

In order to prevail, a plaintiff must "demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff." *Frankhouser v. Clearfield Cty. Career & Tech. Ctr.*, 2019 WL 1259570, at *15 (W.D. Pa. Mar. 19, 2019) (quoting *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122-23 (Pa. Super. Ct. 2004)). "[F]or allegations of sexual harassment to rise to the level of extreme and outrageous conduct, courts have often required

both sexual harassment and retaliation against the harassed employee." *Id.*, at \*17 (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1487 (3d Cir. 1990)).

Contrary to Defendant's argument, Plaintiff alleged circumstances showing that Defendant's discriminatory and retaliatory conduct constitutes "outrageous or extreme conduct." Dr. Ross with Dr. Hines' support advocates militant, hateful, and anti-Semitic/anti-Israel views inside and outside the classroom including the economic, academic, and cultural boycott of Israel, the demonization and deligitimization of that nation and racist claim that Israel is an apartheid state. Compl. ¶¶ 19-23, 29-32, 42-44, 47, 228-230. Dr. Newman, who is of Jewish ancestry, ethnicity, religion and Israeli national origin as well as a Holocaust survivor, approached Dr. Ross about presenting a broader less biased version of the Middle East but was refused. *Id.*, ¶ 33. Drs. Ross and Hines have boycotted Dr. Newman by having her removed as GCS Coordinator, ¶ 38, opposed her Chair candidacy, ¶ 53, placed their Social Justice program in a different department away from Dr. Newman, ¶ 64, and students and faculty mobilized by Dr. Ross have shunned, disrespected, and undermined Dr. Newman as Chair. *Id.*, ¶¶ 23, 45-46. Dr. Newman complained to Point Park that she had seen the conflation of social activism with targeting of Jews and Israel, and that the Social Justice program was a cover for anti-Semitism and very upsetting to her. *Id.*, ¶ 56, 58. She also complained that Dr. Ross' teachings are anti-Semitic and had caused his students and other faculty to shun and disrespect her. *Id.*, ¶¶ 178, 332-34.

In October 2018, a female student involved with Drs. Ross, Hines, and BDS who had shunned Dr. Newman falsely accused her of a Title IX sexual misconduct violation leading to her immediate suspension without any prior notice nor opportunity to respond. Compl. ¶¶ 79, 82, 83, 326. Prior to filing the complaint, the student consulted with Drs. Ross and Hines who then "used

the complaint as part of their discriminatory and retaliatory campaign to discredit Dr. Newman and to remove her from the University." *Id.*, ¶¶ 217-218. Dr. Newman broached to Ms. Stefanko that the complaint was a set-up by Drs. Ross and Hines. *Id.*, ¶ 92. Drs. Ross and Hines improperly publicized the student's confidential charge beyond the Title IX coordinator to upper level administrators to predispose them to find against Dr. Newman. *Id.*, ¶¶ 220-223. Dr. Ross falsely claimed that Dr. Newman inserted herself as the student's advisor for retaliation purposes. *Id.*, ¶¶ 222-25. Dr. Ross, with Point Park's permission, cancelled Dr. Newman's 400-level Spring 2019 course required for a GCS degree and encouraged students enrolled in that course instead to enroll in his 100-level course in Social Justice. *Id.*, ¶¶ 242-45. "As Dr. Newman informed Point Park, the October 2018 situation involving Dr. Newman marked the first known time in American history when a BDS proponent used Title IX against an Israeli and/or Jewish professor." *Id.*, ¶ 135.[4]

The allegation of a Title IX sexual misconduct charge is enormously frightening in a university as it can lead to a career-ending discharge even for a tenured full professor like Dr. Newman, ¶¶ 128-36, 302-4, plus stigmatization, isolation, professional erosion, a reputation for anti-feminism, softness on rape and constant scrutiny and investigation within a background of anti-Semitism and anti-Israel animus.

Plaintiff additionally was shocked and humiliated when PPU told her students first that class was cancelled (¶ 87). During the ban, PPU allowed the investigation to drag on painfully (¶ 100). She was not allowed to return to her office for evidence except with a uniformed security guard who

---

[4]On October 16, 2018, a former Point Park student and acolyte of Dr. Ross who accompanied him to trips to Palestine started a Facebook group of current and former students revealing that Title IX is doing a full-scale investigation of Dr. Newman and imploring the group to "bear witness" against Dr. Newman in any way they could. Compl. ¶¶ 188-202.

escorted her out of the building where she had loyally worked for so long (¶ 182).

In Fall 2018, Dr. Newman formally complained of discrimination. However, Point Park failed to investigate and took no steps to protect her from further discrimination. Compl. ¶ 288. Drs. Ross and Hines absorbed responsibilities for advising students in the GCS program and Dr. Newman became isolated within that program she created. *Id.*, ¶¶ 296-97. In January 2019, the student newspaper ran an article highly critical of Dr. Newman and an Administrator blamed her for the student impact felt by her mid-semester removal. *Id.*, ¶ 289.[5] In February 2019, students filed another Title IX complaint against Dr. Newman. Id., ¶¶ 301-05. However, Point Park never provided Dr. Newman with notice of the allegations nor an opportunity to respond. *Id.*, ¶ 304. After Dr. Newman's return to her position as Chair she continues to be undermined by the Administration and shunned by students and faculty. *Id.*, ¶ 322. In April 2019, Dr. Newman sent a letter to Assistant Provost Prida reiterating issues including that faculty improperly had gone around her as Department Chair to have substitutions approved for required courses, that GCS students associated with the Social Justice program exhibited coordinated shunning behavior and have avoided taking her classes or were disrespectful during her Spring 2019 course. *Id.*, ¶ 324. In September 2019, Dr. Newman was suddenly charged with an undefined infraction that pretextually PPU used to stop the mediation session. Dr. Newman is the only faculty member who has been under constant investigations. *Id.*, ¶ 382. As a result of Defendant's discriminatory and retaliatory actions, the number of students enrolling in Dr. Newman's course(s) has decreased dramatically, she has lost control over the majoring students in her Department, and her scheduling and the direction of the

---

[5] A student from one of her canceled classes posted a racist and sexist Rate My Professor message that falsely stated that Dr. Newman "showed videos calling Muslims savages who are destroying western civilization in a language class to educate us." Compl. ¶ 287.

curriculum continue to be undermined. *Id.*, ¶¶ 323-26.

Because Dr. Newman alleged unending invidious harassment and retaliation against her, her allegations of racial, national origin, and religious harassment rise to the level of extreme and outrageous conduct. *See Frankhouser v. Clearfield Cty. Career & Tech. Ctr.*, 2019 WL 1259570, at *17; *Williams*, 2007 WL 2667981, at *3; *Price*, 790 F.Supp at 100; *EEOC v. Federal Express*, 537 F. Supp. 2d 700 (M.D. Pa. 2005) (evidence of hostile work environment and employer's failure to remedy supported jury verdict in plaintiff's favor on intentional infliction of emotional distress claim).

33. Paragraph 33 is a conclusion of law to which no response is required. To the extent a response is deemed required, Paragraph 33 is denied for the reasons stated in Plaintiff's Brief in Opposition incorporated herein.

34. Paragraph 34 is denied. For example, Plaintiff does not rely on the CBA for any of her claims. The breach of contract claims are based on Defendant's violations of its own policies as pled in the Amended Complaint.

35. Paragraph 35 is denied as a conclusion of law.

36. Paragraph 36 is denied as a conclusion of law.

37. Plaintiff incorporates her Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss the Amended Complaint in its Entirety as if set forth at length herein.

       Respectfully Submitted,

       LIEBER HAMMER HUBER & PAUL, P.C.

       s/James B. Lieber
       James B. Lieber
       Pa. I.D. No. 21748
       Thomas M. Huber
       Pa. I.D. No. 83053
       1722 Murray Ave., 2nd Floor
       Pittsburgh, PA 15217
       (412) 687-2231 (telephone)
       (412) 687-3140 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

        Catherine S. Ryan (PA 78603)
        cryan@reedsmith.com
        David J. McAllister (PA 36729)
        dmcallister@reedsmith.com
        Mariah H. McGrogan (PA 318488)
        mmcgrogan@reedsmith.com
        Reed Smith LLP
        225 Fifth Avenue, Suite 1200
        Pittsburgh, PA 15222
        Counsel for Defendant

        s/James B. Lieber
        James B. Lieber
        Counsel for Plaintiff