**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHANNA NEWMAN,                           )
              Plaintiff,        )
                               )
      vs.                                      )   Civil Action No. 2:20-cv-00204-MRH
                               )
POINT PARK UNIVERSITY,                   )
              Defendant.       )

**POINT PARK UNIVERSITY'S REPLY BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS THE AMENDED COMPLAINT IN ITS ENTIRETY**

As much as Plaintiff would like to have the Court wade into the Boycott, Divestment and Sanctions movement, the actual controversy in this case is far more pedestrian: (i) Plaintiff's unhappiness that she was suspended with pay while Point Park investigated a Title IX complaint lodged against her by a student; and (ii) Plaintiff's unhappiness that Point Park was unwilling to capitulate to her demands during a private, confidential mediation session. Neither gives rise to any viable cause of action, and nothing in Plaintiff's Opposition shows otherwise or would prevent dismissal of all 19 Counts in the Amended Complaint.

## INTRODUCTION

Faced with a motion to dismiss, it is incumbent upon a plaintiff to respond to the arguments advanced. As this Court has observed: "Turning to Defendants' arguments, the Secretary indeed failed to respond to the request for dismissal in its brief in opposition to the Motion [to Dismiss]. Therefore, the Court considers dismissal of such claims as unopposed." *Acosta v. Holland Acquisitions, Inc.*, No. 2:15-CV-1094, 2018 WL 6242231, at *3 (W.D. Pa. Nov. 29, 2018) (J. Hornak). *See also Lawson v. Barger*, No. 17-cv-97, 2018 U.S. Dist. LEXIS 176857 (W.D. Pa. Oct. 12, 2018) (plaintiff's failure to respond to an argument in his opposition brief to a motion to dismiss leads the Court to conclude that plaintiff either abandoned such a claim or did not intend

to assert such a claim); *Tambasco v. U.S. Dep't of Army*, 2018 WL 1203466, at *2 (M.D. Pa. Mar. 8, 2018) (dismissing claims as unopposed when plaintiff failed to respond to arguments by defendants in their motion to dismiss); *Lada v. Del. Cty. Cmty. Coll.*, 2009 WL 3217183, at *10 (E.D. Pa. Sept. 30, 2009) ("To put it simply:  plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested.").

Plaintiff has abandoned Counts V, IX, and XII of her Amended Complaint, where she alleged claims of a hostile work environment based on sex and on age, and she has abandoned Count XV, where she alleged a claim of a breach of contract based on provisions of the Collective Bargaining Agreement between Point Park University and Newspaper Guild of Pittsburgh / Communications Workers of America, Local 38061, effective August 17, 2017 to June 30, 2021 ("CBA").

As to the hostile work environment claims, Plaintiff writes that she was "subjected to a hostile work environment based on Jewish race, religion, and Israeli national origin."  ECF No. 24, p. 24.  Nowhere in her Opposition does Plaintiff suggest that she was also purportedly subjected to that sort of an environment due to her sex or age such that Counts V, IX, and XII could survive the pending Motion.  Likewise, as to the breach of contract claim founded on the Due Process (Article 24) and the Non-Discrimination (Article 28) provisions of the CBA, Plaintiff admitted that "[a]s a Chair during the relevant period, [she] is considered an academic administrator" not covered by the CBA.  ECF No. 24, pp. 23-24.  Nowhere in her Opposition does Plaintiff suggest that her employment with Point Park was actually covered by the CBA such that Articles 24 and 28 of the CBA would apply to her.  On the contrary, she states:  "The CBA is not her remedy because she is not in the bargaining unit."  ECF No. 24, p. 22.

For these reasons, and those set forth in Point Park's Principal Brief, Counts V, IX, XII, and XV should now be dismissed.

## ARGUMENT

For the reasons set forth below, each of the other Counts of the Amended Complaint should now be dismissed.

### A.   PLAINTIFF'S DISCRIMINATION AND RETALIATION CLAIMS SHOULD BE DISMISSED

Plaintiff's efforts to salvage her discrimination and retaliation claims fail for a number of reasons.  In the first place, the cases cited by Plaintiff do not hold that an indefinite paid suspension, in and of itself, constitutes an adverse employment action.  Crucial to both the *Vay v. Huston*, CIVIL ACTION NO. 14-769, 2016 WL 7324596, at *13 (W.D. Pa. Dec. 16, 2016) and the *Thourot v. Monroe Career & Tech. Inst.*, CIVIL ACTION NO. 3:15-1779, 2016 WL 6082238, at *5 (M.D. Pa. Oct. 17, 2016) cases was that the plaintiffs were suspended ***without being accused of any wrongdoing***.  For example, in *Vay*, the court determined that the employer exceeded its normal disciplinary policies by placing the plaintiff on indefinite leave without any allegation of wrongdoing. 2016 WL 7324596, at *13.  Plaintiff, by contrast, readily admits that she was accused by a student of wrongdoing.  *See Amended Complaint*, at ¶¶ 79, 84, 301-02, 305-06.  Similarly*, the determinations by the courts in *Killen v. Nw. Human Servs., Inc.*, Civil Action No. 06-4100, 2007 WL 2684541, at *4 (E.D. Pa. Sept. 7, 2007) and in *Prise v. Alderwoods Grp., Inc.*, Civil Action No. 06-1470, 2011 WL 3047629, at *10 (W.D. Pa. July 25, 2011) do not support the proposition that an indefinite paid suspension alone constitutes an adverse employment action. For example, in *Killen*, the court concluded that the plaintiff's indefinite paid suspension was ***not*** an adverse employment action but, for purposes of the plaintiff's retaliation claim, concluded that

the threat of an intrusive financial audit during her paid administrative leave, not the leave itself, supported the claim.

Unlike the actions taken by the employers in these cases, the actions cited by Plaintiff simply do not amount to anything more than the natural consequences of a paid suspension.  In her Amended Complaint, she alleges that during the paid suspension: (i) she was removed from teaching in the middle of the semester; (ii) she was removed as Department Chair; (iii) her Spring 2019 400-level course was cancelled; (iv) she was barred from her office; (v) her email access was disabled; (vi) a scheduled Department meeting was cancelled; and (vii) she was only permitted to enter her office once with a security officer present.  *See Amended Complaint*, ¶¶ 84-86, 89, 136-37, 156, 168, 177, 180-86, 246, 423, 433, 454, 474, 497, and 526.  These typical outcomes associated with being on a paid suspension do not, under applicable, law result in a "significant change in employment status" and, as such, are not the sort of employment decisions that the Courts find to be actionable.  *See Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) ("A paid suspension . . . does [not] effect a 'serious and tangible' alteration of the 'terms, conditions, or privileges of employment' . . . because 'the terms and conditions of employment ordinarily include the possibility that an employee will be subject to an employer's disciplinary policies in appropriate circumstances.")  *Hughes v. Allegheny Cty. Airport Auth.*, Civil Action No. 15-221, 2017 WL 2880875, at *7-8 (W.D. Pa. July 6, 2017) (holding that a paid suspension was not an adverse employment action for Title VII discrimination and retaliation claims and noting that: "[c]ourts have routinely held that paid suspensions of this nature do not constitute adverse employment actions.").

Plaintiff's other efforts to show an adverse employment action also fail.

1.      **Point Park's alleged failure to conduct a timely investigation does not constitute an adverse employment action.**

None of the cases Plaintiff relies upon in her Opposition support her argument that Point Park's purported failure to conduct a timely investigation of her internal complaint constituted an adverse employment action.  *See McFalls v. Brightview Landscapes, LLC*, CIVIL ACTION NO. 18-2871, 2020 WL 1922828, at *8 (E.D. Pa. Apr. 21, 2020) ("The results of Defendants' investigations may not have been to Plaintiff's liking, and Plaintiff may have gone about the investigation differently if she were conducting it, but those cannot be the relevant standards . . . . We conclude that the deficiencies in Defendants' investigations, if any, do not constitute an adverse employment action."); *Scott v. Sunoco Logistics Partners, LP*, 918 F. Supp. 2d 344, 356 (E.D. Pa. 2013) ("Surely, if a total failure to investigate is not an adverse employment action then a failure to provide written notes and conclusions from an investigation is not an adverse employment action.").

Seemingly acknowledging the lack of case law supporting her argument, Plaintiff resorts to arguing that the failure to investigate caused her to be subject to further alleged discriminatory and retaliatory conduct.  However, all of this alleged conduct cited by Plaintiff is the same type of conduct Plaintiff initially reported.  As stated in *Scott*:  "[F]ailure to investigate a complaint of discrimination, where the protected activity the employee has engaged in is the filing of the very same complaint, is not an adverse employment action . . . [as] it leaves an employee no worse off than before the complaint was filed."  918 F. Supp. 2d at 356 (citing *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640-41 (10th Cir. 2012); *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010)).

> **2. Point Park's investigation of another student complaint and its resolution of a union grievance involving Plaintiff are not adverse employment actions.**

Plaintiff argues that the alleged "repeated nature of the bogus investigations" constituted an adverse employment action against her (ECF No. 24, p. 20), relying on the Third Circuit's decision in *Holt v. Pennsylvania*, 683 Fed. Appx. 151, 158 (2017). There, the court found that the employer's decision to investigate the plaintiff *without any reasonable basis* could constitute a "pattern of antagonism" sufficient to create a causal link between the employee's protected activity and the adverse employment action. In contrast, and unlike in *Holt*, Point Park had reason to undertake an investigation – and this was the *result of the student complaints filed against Plaintiff*.

Similarly, Plaintiff offers no case law to support her contention that Point Park's resolution of a union grievance filed against her and its communicating the resolution to her was an adverse employment action. In stark contrast, courts have held that disagreement with an employer's administrative and employee grievance decisions are not adverse employment actions for purposes of discrimination and retaliation claims. *See Williams v. Pa. Human Relations Comm'n*, Civil Action No. 14-1290, 2016 WL 6834612, *17 (W.D. Pa. Nov. 21, 2016), *aff'd*, 870 F.3d 294 (3d Cir. 2017) (citing *Mieczkowski v. York City Sch. Dist.*, 414 Fed. Appx. 441, 446-47 (3d Cir. 2011) ("More importantly, the *de minimis* administrative decisions with which Williams disagrees do not constitute adverse employment action.")); *West v. Henderson*, Civ. No. 99-1975 (TFH), 2000 WL 35635902, *6-7 (D. D.C. Nov. 3, 2000) (finding that resolution of a subordinate's grievance in favor of the subordinate was not an adverse employment action for discrimination or retaliation claims).

3.    **Plaintiff's position that the discontinuation of settlement negotiations constitutes an adverse employment action is unsupported by fact or law.**

In yet another attempt to identify an adverse employment action supporting her discrimination and retaliation claims, Plaintiff maintains that Point Park's "failure to participate in the mediation session on September 25, 2019 constitutes an adverse action."  ECF No. 24, p. 21. Plaintiff offers no case law support for her claim.  Nothing required Point Park to agree to settlement terms with Plaintiff during the mediation session or to resolve her Charge of Discrimination.  To hold otherwise would put a chilling effect on early settlement discussions. More importantly, Plaintiff remains employed in the same position that she held prior to mediation. Accordingly, Plaintiff's discrimination and retaliation claims on this basis fail as a matter of law.

Finally, as to her retaliation claims, Plaintiff relies upon Dr. Ross' and Dr. Hines' alleged behavior towards her to show a pattern of antagonism.  However, Plaintiff's Amended Complaint is replete with allegations that similar behavior existed well before she reported her issues with Dr. Ross and Dr. Hines.  The Third Circuit has held that actions related to strained relationships between employees, which existed prior to protected activity, do not support a finding of a pattern of antagonism.  *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (finding that supervisors' actions taken after employee complained did not establish a "pattern of antagonism" as they did not show a "qualitatively different relationship" than what existed prior to the complaint).

For all of these reasons, and those stated in Point Park's Principal Brief, Plaintiff's discrimination and retaliation claims fail as a matter of law.

**B.**     **PLAINTIFF'S REMAINING HOSTILE WORK ENVIRONMENT CLAIMS SHOULD BE DISMISSED**

While Plaintiff's Opposition cites a number of ways an employer *could* subject an employee to a hostile work environment based on their Jewish race, religion, and Israeli national origin, Plaintiff has failed to plead any allegations that *she* was subject to any such treatment.

Indeed, the case law relied upon by Plaintiff involved poignant, anti-Semitic comments and treatment.  For example, in *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 279 (3d Cir. 2001), the Third Circuit found that the plaintiff was subjected to unprecedented job scrutiny and hostile treatment when she was not available to work on the Sabbath and Jewish holidays, and that pointed statements were addressed to her "regarding her faith and behavior."  In the unreported Eastern District of Virginia opinion, *Prettyman v. LTF Club Operations Co., Inc.*, Civil Action No. 1:18cv122, 2018 WL 5980512, at *6 (Nov. 13, 2018), the plaintiff was subjected to derogatory, anti-Semitic comments:  "In her deposition, plaintiff testified that Nickerson referred to her "Jewish money" on numerous occasions and that another employee referred to her as a "Jewish American Princess."  Plaintiff does not allege she was subject to any such hostile treatment or comments regarding her Jewish race or religion or Israeli national origin.

At most, Plaintiff's hostile work environment claims boil down to her disagreement with Dr. Ross' teachings and beliefs regarding the Israel-Palestine conflict and alleged shunning and disrespect she received from students, faculty, and others as a result those teachings.  As the Supreme Court has repeatedly held, the "standards for judging [hostile work environment claims] are sufficiently demanding to ensure that Title VII does not become a general civility code."  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also Jensen v. Potter*, 435 F.3d 444, 449 (3d. Cir. 2006) (*overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ("A cold shoulder can be hurtful, but it is not harassment")); *Peace-*

*Wickham v. Walls*, 409 Fed. Appx. 512, 523 (3d. Cir. 2010) (holding reassignment of job duties,

delay in resolution of plaintiff's complaint against a co-worker, and ignoring plaintiff's complaints

regarding work-related issues did not create a hostile work environment); *Brooks v. City of San*

*Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) ("Because an employer cannot force employees to

socialize with one another, ostracism suffered at the hands of coworkers cannot constitute an

adverse employment action").

       None of the alleged actions pled by Plaintiff is sufficiently severe or pervasive for her

hostile work environment claims against Point Park to withstand a motion to dismiss.

       **C.    PLAINTIFF'S BREACH OF CONTRACT CLAIM RELATED TO THE ACADEMIC**
              **FREEDOM POLICY IN THE ADJUNCT FACULTY HANDBOOK SHOULD BE**
              **DISMISSED**

       There is an Academic Freedom provision (at Article 7) in the CBA and there is an

Academic Freedom provision (at Section 4.9) in Point Park's Adjunct Faculty Handbook.  *A true*

*and correct copy of the Adjunct Faculty Handbook is attached hereto as* **Exhibit A**.  In her

Amended Complaint, Plaintiff relied on the Academic Freedom provision of the CBA for her

breach of contract claim but, faced with her admission that the CBA does not apply to her, Plaintiff

writes in her Opposition that:  "Plaintiff's breach of contract claims are not based on the CBA;

they are based on Defendant's violation of its policies."  *See also* ECF No. 24, p. 23 (relying on

provisions of Point Park's "Faculty Handbook," which is Point Park's Adjunct Faculty Handbook).

As a result, Point Park assumes that Plaintiff now relies on the Academic Freedom provisions of

the Adjunct Faculty Handbook in support of her breach of contract claim, although it is not entirely

clear because Plaintiff only cites to the "AAUP Red Book, 1995 edition" and does not attach any supporting document in either her Amended Complaint or her Opposition Brief.[1]

As an initial matter, any claim based on the Academic Freedom provision in the Adjunct Faculty Handbook fails because nowhere in her Amended Complaint or in her Opposition Brief does Plaintiff suggest that she was an Adjunct Faculty Member such that the Adjunct Faculty Handbook applies to her.  As Plaintiff points to no other Academic Freedom policy, Count XIV cannot withstand dismissal.

As a further matter, any such claim fails because Plaintiff has not and cannot show the existence of a contract upon which the claim could be based.  The cases relied upon by Plaintiff only highlight that she has not pled a viable breach of contract claim.  In each case, the parties agreed that they had entered into a contractual relationship.  *See Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 422 (Pa. 2001) (outlining the provisions of the contractual relationship between the parties including the Faculty Handbook, which "expressly stated that certain of its Sections . . . constituted part of a faculty member's contractual relationship with the University"); *Waggaman v. Villanova Univ.*, No. Civ. 04-4447, 2008 WL 4091015, *20 ("Since the defendant does not dispute that provisions of the manual at issue here constitute part of an enforceable contract, the following rules of Pennsylvania law apply to plaintiff's claim of breach . . ."); *McAdams v. Marquette Univ.*, 914 N.W.2d 708, 713-14 (Wisc. 2018) ("His most recent contract is evidenced by an appointment letter dated March 1, 2014.  It incorporates, and is therefore subject to, the University's Statutes, the Faculty Handbook, and other documents identified in the

---

[1]     The "AAUP Redbook" is the *American Association of University Professor's Policy Document and Reports*, available at https://www.aaup.org/reports-publications/publications/redbook.  It is wholly unclear why Plaintiff is citing this and how she claims that this collection of sample policies creates a binding contract between her and Point Park, let alone why the 1995 version allegedly applies.

agreement . . ."); *Abatena v. Norfolk State Univ.*, 2014 WL 1819665, *7 (E.D. Va. May 7, 2014)

(relying on an employment contract in support of breach of contract claims).  There is no such

contractual agreement between Point Park and Plaintiff.

As such, Count XIV should be dismissed.

### D.   PLAINTIFF'S BREACH OF CONTRACT CLAIMS BASED ON ANTI-DISCRIMINATION POLICIES SHOULD BE DISMISSED

In Counts XIII and XVI, Plaintiff claims that Point Park breached its Title IX Policy and

its Policy Prohibiting Sexual Misconduct, Relationship Violence and Stalking.

Plaintiff's Opposition makes a feeble attempt to differentiate the factual allegations giving

rise to her discrimination, harassment and retaliation claims and the factual allegations giving rise

to her breach of contract claims related to the Anti-Discrimination policies.  Specifically, she

claims that her breach of contract claim is based on Point Park's alleged "failure to follow specific

policy provisions" of the Anti-Discrimination policy and identifies ways that Point Park's

investigation allegedly was deficient – ***the exact same bases for Plaintiff's discrimination and

retaliation claims.***  *See* Section A, *supra*.  Because these claims are factually identical, Plaintiff's

breach of contract claims related to the Anti-Discrimination policies are preempted by the PHRA.

*See Gupta v. Sears, Roebuck & Co.,* No. CIV.A. 07-243, 2009 WL 890585, at *27 (W.D. Pa.

Mar. 26, 2009) (Holding that breach of contract claims are preempted by the PHRA "when said

claims are based on the same facts as the plaintiff's discrimination claims).

Further, Plaintiff's relies on case law that involved an entirely separate set of facts for the

PHRA and breach of contract claims.  In *Belverena v. Central Parking System, Inc.*, No Civ. A.

05-4364 2005 WL 2850343, at *2 (E.D. Pa. Oct. 31, 2005), the employee alleged that the employer

breached an implied contract by failing to provide a written warning prior to termination, while

his discrimination claims were based on his age. The court found that, because the plaintiff's

breach of contract claims were not based on the same set of facts as his PHRA claims, they were not preempted. *Id.* For similar reasons, in *Deramo v. Consolidated Rail Corp.*, 607 F. Supp. 100, 102-03 (E.D. Pa. 1985), the court found that the plaintiff's implied breach of contract claims were not preempted by the PHRA because they relied on an implied contract which arose when the employer relocated the plaintiff from New York to Philadelphia; facts entirely separate from the plaintiff's discrimination claims.   In so holding, the court found that it was "entirely possible for [the plaintiff] to succeed on his breach of contract claim without proving discrimination." *Id.* at 102.

In contrast, Plaintiff's breach of contract claims based on Point Park's Anti-Discrimination policies rely upon the exact same factual basis as her discrimination claims.  To succeed on her breach of contract claims, Plaintiff will have to prove the same set of facts as her discrimination claims.  Thus, unlike the *Belverena* and *Deramo* plaintiffs, Plaintiff cannot succeed on her breach of the Anti-Discrimination policies without proving discrimination and, thus, the contract claims are preempted.

More fundamentally, neither the Title IX Policy nor the Policy Prohibiting Sexual Misconduct constitute a valid contract between Point Park and Plaintiff, as set forth in Point Park's Principal Brief.  *See* ECF No. 19, p. 19.

The Title IX Policy relied upon by Plaintiff for her breach of contract claim is a website page that lists Point Park's Title IX Notice of Nondiscrimination ("Point Park University does not discriminate on the basis of sex in its education programs, activities, or employment practices"), along with general information about responding to instances of sexual misconduct.  *See* ECF No. 18-2.  Rather than forming the basis of a contractual relationship between Plaintiff and Point Park, the posting simply sets forth Point Park's efforts to comply with its legal obligations under

state and federal law.  *See Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 308 (2004) ("If we were to agree with Monaco that the quoted provision could be the predicate for a breach of contract claim, individuals bringing employment discrimination cases in New Jersey where an employment manual contained such a provision could as a matter of course assert both statutory discrimination and breach of contract claims based on the employer's same underlying conduct.  In order to prove the breach of contract claim the plaintiff would be required to prove the underlying discrimination claim by showing how the employer's actions violated the anti-discrimination laws.  ***We reject Monaco's attempt to create two causes of action where he is only able to support one.  We are satisfied that New Jersey law does not provide a separate breach of contract cause of action based on generalized anti-discrimination language in an employee handbook where the alleged discrimination would be in violation of the NJLAD***.") (emphasis added); *Tourellotte v. Eli Lilly & Co.*, 626 Fed. Appx. 831 (3d Cir. 2016) (finding no breach of contract claim where the plaintiff relied on an anti-discrimination policy).  As a result, Plaintiff's breach of contract claim based on the Title IX policy should be dismissed.

Turning to Plaintiff's allegations related to the Policy Prohibiting Sexual Misconduct, Relationship Violence and Stalking, Plaintiff similarly fails to identify the formation of a contractual relationship between her and Point Park.  That policy provides only an overview of Point Park's process for responding to allegations of misconduct.  *See* ECF No. 18-3.  Accordingly, Plaintiff mistakenly relies on *Braun v. Wal-Mart Stores Inc.,* 24 A.3d 875, 945 (Pa. Super. Ct. 2011), which found that the employer's rest break, off-the clock work, and meal break policies in the employee handbook created a unilateral contract to provide such rest breaks to employees.  However, unlike the plaintiffs in *Braun*, Plaintiff has pointed to no language in the Policy

Prohibiting Sexual Misconduct, Relationship Violence and Stalking which creates any such unilateral contract.

Although Plaintiff claims that she did not receive adequate notice of the allegations against her or the opportunity to respond prior to the institution of her paid suspension, Plaintiff fails to identify any language in the Policy Prohibiting Sexual Misconduct, Relationship Violence and Stalking that creates any obligation to do these things. She also fails to identify provisions of the Policy Prohibiting Sexual Misconduct, Relationship Violence and Stalking that Dr. Ross and Dr. Hines allegedly breached by reporting Plaintiff's inappropriate behavior toward the student to University administrators (or explain why their supposed breach creates a claim against Point Park). Simply put, the Policy Prohibiting Sexual Misconduct, Relationship Violence and Stalking imposes no contractual obligation on Point Park to respond to allegations of alleged misconduct in a particular manner.

In sum, Plaintiff's breach of contract claims based on these anti-discrimination policies should be dismissed.

### E. PLAINTIFF'S BREACH OF CONTRACT CLAIM BASED ON THE AGREEMENT TO MEDIATE SHOULD BE DISMISSED

Plaintiff's Opposition does nothing to alter the necessary conclusion that no breach of contract claim can be founded on the Agreement to Mediate in connection with Plaintiff's EEOC Charge of Discrimination. The cases cited by Plaintiff are entirely inapposite. Each involved issues of confidentiality, which is not at issue here. *Batoff v. Charbanneau*, 130 F. Supp.3d 957 (E.D. Pa. 2015) involved an allegation that a party violated the mediation agreement by contacting her lawyer when a precondition to the mediation was that the parties would not contact their attorneys during the process. Likewise, *Bethlehem Area Sch. Dist. v. Zhou*, Civil Action No. 09-03493, 2012 WL 930998 (E.D. Pa. Mar. 20, 2020) related to public statements about what had

occurred during the mediation when the parties had previously agreed to confidentiality.   These

cases are a far cry from what Plaintiff alleges, *to wit*, that Point Park was compelled to agree to her

settlement terms and to continue to mediate notwithstanding intervening events.   Nothing in the

Mediation Agreement placed a duty on Point Park to enter into a resolution with Plaintiff regarding

her Charge of Discrimination.   Even read in the light most favorable to Plaintiff, the allegations in

the Amended Complaint establish only that Point Park ended settlement negotiations without

explaining itself to Plaintiff's satisfaction.   This does not give rise to any conceivable breach of

contract.

As such, Count XVII of the Amended Complaint should be dismissed.

### F.   PLAINTIFF'S NEGLIGENT SUPERVISION CLAIM SHOULD BE DISMISSED

Plaintiff's contention that her negligent supervision claim does not arise out of the same

set of facts as her PHRA claims is belied by her own allegations.   A comparison of Plaintiff's

Amended Complaint and her Opposition Brief confirms this.   In her Opposition Brief, Plaintiff

asserts that "she does not rely on Point Park's failure to investigate if Dr. Ross and/or Dr. Hines

were behind the October Title IX complaint as Dr. Newman raised . . . or Point Park's failure to

intervene in the actions of Dr. Ross and Hines to use students to file multiple bogus Title IX

claims."   Yet, in her Amended Complaint, Plaintiff alleges that "[t]he adverse actions include, but

are not limited to . . . [the University] (1) accus[ing] her of ***multiple Title IX violations without

proper justification***, (2) subject[ing] her to ***repeated workplace investigations*** and increased

scrutiny, (3) fail[ing] to conduct a timely ***investigation of her discrimination complaints*** even

though it promised to do so."   *Amended Complaint,* ¶ 454.

Plaintiff cites *Watkins v. Rite Aid Corp.*, No. 4:06cv00299, 2006 WL 2085992 (M.D. Pa.

July 25, 2006), in which the plaintiff claimed that Rite Aid negligently supervised two individual

defendants by allowing them to discriminate against him because of his age.   The court found that

"the PHRA preempts common law negligent supervision claims against employers when . . . such claims ***arise from, and form an integral part of, the PHRA-prohibited discriminatory conduct***." *Id.* at \*4.  As a result, these allegations are also preempted by the PHRA and should be dismissed.

That then leaves Plaintiff's contention that Point Park negligently supervised the Director of Point Park's Center for Student Success, Molly McClelland, who purportedly "showed no interest in investigating the alleged rape [that Plaintiff reported that a student had disclosed to her] although it was Point Park's obligation to determine if the act occurred on campus and/or whether the perpetrator was affiliated with the University, and if so to report to it [sic] to the Federal Government and pursue it under Title IX." *See Amended Complaint*, ¶¶ 612, 616.  Again, Plaintiff misses the mark.  Nowhere in the Opposition Brief does Plaintiff respond to Point Park's argument that it is not reasonably foreseeable that McClelland's alleged failure to investigate Plaintiff's report that a *student* had been raped would result in harm to *Plaintiff's* reputation, cause *Plaintiff* cognizable emotional distress, or result in *Plaintiff* experiencing "out of pocket costs."

For these reasons, Count XVIII of the Amended Complaint should be dismissed.

### G.   PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED

In her Opposition, Plaintiff claims that she suffered distress "because she was targeted for adverse treatment by faculty, students, and Point Park on account of her Jewish religion, ancestry and ethnicity and Israel national origin as well as for retaliatory reasons."  ECF No. 24, p. 36.  She then summarizes what appears to be all 628 paragraphs of her Amended Complaint.  Plaintiff's Opposition confirms that dismissal of this claim is appropriate.

Plaintiff attempts to avoid the exclusivity provision of the Pennsylvania Workers' Compensation Act by relying on the personal animus exception.  The personal animus exception does not apply here.  It reads:  "the term 'injury arising in the course of his employment' as used

in this article, shall not include an injury caused by the act of a third person to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment." 77 Pa. Stat. § 411(1). "To fit within this exception, the third party's or fellow employee's motivation must have been motivated by his animosity ***against the injured employee***. ***If the third party would have attacked a different person in the same position as the injured employee, the attack falls outside of the 'third-party attack' exception.***" *Shaffer v. Procter & Gamble*, 604 A.2d 289, 292 (1992) (emphasis added). Thus, Plaintiff must show that "the alleged motivation behind the offending act [was] individualized, ***not just aimed at every member of a particular class***." *See Alers v. City of Phila.*, 919 F.Supp. 2d 528, 561 (E.D. Pa. 2013). Here, Plaintiff maintains that Dr. Ross and Dr. Hines were involved in a "militant version of the BDS . . . [that] included economic as well as the academic and cultural boycott of Israel and Israelis" and that "Dr. Ross with Point Park support has advanced militant and hateful views against Israel and in favor of BDS that are anti-Semitic and lead to the creation of a hostile work environment for Dr. Newman including shunning and disrespect by student followers, and some faculty, administrators and alumni." *Amended Complaint*, ¶¶ 21, 23. Even accepting Plaintiff's allegations as true, Dr. Ross's alleged treatment of Plaintiff related to her association with Israel, rather than her identity as an individual.

Plaintiff alleges only a finite number of actions that Dr. Ross and Dr. Hines allegedly took against her personally. She claims that Dr. Ross and Dr. Hines "have boycotted [her] by having her removed as GCS Coordinator . . . , opposed her Chair candidacy . . . placed their Social Justice program in a different department away from Dr. Newman . . . , and students and faculty mobilized by Dr. Ross have shunned, disrespected, and undermined Dr. Newman as Chair." ECF No. 24, p. 37. Each one of these disputes is inherently work-related. *See Kovach v. Turner Dairy Farms,*

*Inc.*, 929 F. Supp.2d 477, 497 (W.D. Pa. 2013) (J. Hornak) ("Pennsylvania law makes it plain that Plaintiff's injury must be *either* work-related or for *purely* personal reasons; it cannot be both."). As a result, Plaintiff cannot rely on the personal animus exception to the Workers Compensation Act and her claims are preempted and subject to dismissal on this basis.

Even if Plaintiff's intentional infliction of emotional distress claim was not preempted by the Act (which it is), the claim still would fail because the allegations upon which it is based are not "extreme and outrageous." As set forth in Point Park's Principal Brief, Plaintiff's allegations simply do not rise to the egregious conduct necessary to support an intentional infliction of emotional distress claim. *See Adams v. City of* Greensburg, Civil Action No. 17-550, 2018 WL 13186068, *7 (W.D. Pa. Mar. 14, 2018) (noting that Pennsylvania law sets an "extremely high bar for outrageousness" and that the plaintiff's allegations "while atrocious" did not meet that standard); *Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998) (while alleged conduct was "highly offensive and unacceptable," it was not extreme or outrageous enough to sustain an intentional infliction of emotional distress claim); *McGlone v. Allegheny Valley School*, 556 F. Supp. 2d 498, 504 (E.D. Pa. 2008) (unlawful harassment does not present an intentional infliction of emotional distress claim); *Nayak v. Voith Turbo, Inc.*, No. 1:14-cv-1053, 2016 WL 860664, *3-4 (M.D. Pa. Mar. 7, 2016) (allegations of serious incidents of harassment not sufficient to state an intentional infliction of emotional distress claim); *Capresecco v. Jenkintown Borough*, 261 F. Supp. 2d 319, 323-24 (E.D. Pa. 2003) (unlawful termination does not present cognizable intentional infliction of emotional distress claim). Plaintiff's re-hashing of these allegations does not alter this conclusion.

Accordingly, and as the governing case law confirms, Plaintiff has failed to state a plausible claim for intentional infliction of emotional distress.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Point Park University respectfully requests that its

Motion be granted and that the Amended Complaint be dismissed in its entirety, with prejudice.

*/s/ David J. McAllister*
Catherine S. Ryan (PA 78603)
cryan@reedsmith.com
David J. McAllister (PA 36729)
dmcallister@reedsmith.com
Mariah H. McGrogan (PA 318488)
mmcgrogan@reedsmith.com
Reed Smith LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA  15222
Phone:  (412) 288-4226/3058/3152
Fax:      (412) 288-3063

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 1, 2020, a true and correct copy of the foregoing *Point Park University's Reply Brief in Support of its Motion to Dismiss the Amended Complaint in its Entirety* was filed electronically with the Court.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system, and the parties may access this filing through the Court's system.

*/s/ David J. McAllister*
*Attorney for Defendant*