## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHANNA NEWMAN, | ) | Civil Action No. 2:20-cv-00204-MRH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| POINT PARK UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | Filed Electronically |

### PLAINTIFF'S SURREPLY BRIEF

Plaintiff submits that Defendant's Motion to Dismiss should be denied in its entirety.

### I.  ARGUMENT

**A.**     Plaintiff submits that she has not abandoned any of her claims.  Claiming that the exact nature of Plaintiff hostile work environment claims was "unclear," Defendant framed the issue as follows: Plaintiff's hostile work environment claims purportedly relate to "Dr. Ross' teachings and beliefs regarding the Israel-Palestine conflict, which Plaintiff claims resulted in her being subjected to 'shunning and disrespect by student followers, and some faculty [including Dr. Hines], administrators and alumni.'" ECF 19, p. 15; see also ECF 18, ¶ 15 ("Plaintiff alleges only that a colleague 'has advanced militant and hateful views against Israel' and that this resulted in her being subjected to 'shunning and disrespect by student followers, and some faculty, administrators and alumni.'").  Plaintiff addressed the framed issue in her Response Brief, ECF 24, p. 18-22, and denied Defendant's Motion to Dismiss paragraphs requesting that the hostile work environment claims be dismissed.  ECF 25, ¶¶ 14-17.

Defendant never explained in its Brief how Plaintiff's counts for sex and age hostile work environment (*i.e.*, the hostile work environment claims unrelated to Plaintiff's Jewish race and

religion and Israeli national origin) failed to state a claim upon which relief can be granted.  As a result, there was no substantive argument for Plaintiff to respond to regarding sex and age hostile work environment and this Court should find that Defendant waived those arguments.  Based on Defendant's failure to set forth any substantive argument regarding sex and age hostile work environment, Plaintiff should not be found to have abandoned those claims.

Defendant's reliance on *Lawson v. Barger*, No. 17-97, 2018 WL 6524382 (W.D. Pa. Oct. 12, 2018), is misplaced.  That plaintiff waived a retaliation claim which he did not expressly set forth in his complaint and did not mention in his brief in opposition to the defendant's motion to dismiss. *Id.* at *3 n.2 ("[a]lthough the Amended Complaint does not reference the word retaliation or appear to seek relief on a retaliation theory of liability, Defendants, out of an abundance of caution, elected to include a retaliation analysis in their Motion to Dismiss.  Plaintiff did not respond to that analysis in his opposition brief.  Consequently, the Court concludes that Plaintiff is either not asserting a claim for retaliation or has elected to abandon that theory of liability").  Here Plaintiff pled separate causes of action for a sexually hostile work environment (Count V) and for an ageist hostile work environment (Count XII), and she specifically denied the allegations in Defendant's Motion seeking to dismiss those claims.  ECF 24, ¶¶ 14-17.

The claim that Plaintiff abandoned one of her breach of contract claims (Count XV) likewise is off the mark.  The University erroneously argued that Plaintiff's breach of contract claim involving due process and anti-discrimination arose from the Collective Bargaining Agreement despite the fact that Plaintiff never pled the CBA as the source of her claim.  Plaintiff alleged that "Point Park communicated to Dr. Newman certain rights, policies, and procedures which she accepted by continuing performance of her duties," and "[a]mong those rights, policies, and procedures was Point

Park's due process policy and its anti-discriminatory policy." ECF 15, ¶¶ 572-76. Under Pennsylvania law, an implied contract may arise from a long-standing course of dealing between the parties. *See e.g. Crawford's Auto Ctr., Inc. v. Commonwealth, Pa. State Police*, 655 A.2d 1064, 1066 (Pa. Commw. Ct. 1995) ("[a]n implied contract is one where the parties assent to formation of a contract, but instead of being expressed in words, the intention to incur an obligation is inferred from the conduct of the parties in light of the surrounding circumstances, including the course of dealing") (collecting citations). *See also* RESTATEMENT (SECOND) OF CONTRACTS, § 4 cmt. a (1981) (an implied contract may arise through the course of dealing between the parties).

In addition, the due process rights afforded to Plaintiff are reflected in Point Park's Handbook. *See* Point Park Coll., "2000 Faculty Handbook," at 25 (2000), *at* http:// www. asjmc.org/ contemporary/ tenure/university% 20wide%20t_p/Point%20Park%20College.pdf ("Due process will be accorded not only to Faculty members with tenure but also, during their appointments, to others with probationary or temporary Faculty status...."). They also are reflected in the AAUP's Statement on Academic Freedom requiring that tenured faculty be afforded the protections of due process in terms of both termination and discipline. *See* Am. Ass'n of Univ. Prof., "1940 Statement of Principle on Academic Freedom and Tenure (with 1970 Interpretive Comments)," at 16 (last visited on Jun. 14, 2020) at https://www.aaup.org/file/1940%20Statement.pdf ("[i]n all cases where the facts are in dispute, the accused teacher should be informed before the hearing in writing of the charges and should have the opportunity to be heard in his or her own defense by all bodies that pass judgment upon the case. The teacher should be permitted to be accompanied by an advisor of his or her own choosing who may act as counsel. There should be a full stenographic record of the hearing

available to the parties concerned").[1]

In Pennsylvania, "[t]he law is well settled that absent mutual assent by the contracting parties, the terms of an agreement cannot be modified by subsequent unilateral action." *U.S. Bank Nat'l Ass'n v. Gerber*, 380 F.Supp.3d 429, 435 (E.D. Pa. 2018) (collecting cases). *See also In re: Commonwealth Renewable Energy, Inc*., 540 B.R. 173, 189 (Bankr. W.D. Pa. 2015) ("[w]hile a contract may be altered after its formation, all parties must mutually agree to the new terms and consideration must be exchanged"). In light of the requirement of mutual assent, a party may not unilaterally modify a contract without the other party's knowledge and consent. *Allstate Ins. Co. v. Tokio Marine & Nichido Fire ins. Co., Ltd.*, 464 F.Supp.2d 452, 456 (E.D. Pa. 2006). Plaintiff has tenure and never agreed to relinquish her status. ECF 15, ¶¶ 117, 128, 132-3, 561-562.

Based on Defendant's failure to accurately state the source of Plaintiff's breach of contract claim in Count XV and the inference of an agreement,[2] the Court should find that Plaintiff has not abandoned that claim and deny Defendant's motion to dismiss it. *See e.g. Bellack v. County of Montgomery*, No. Civ. A. 97–3709, 1997 WL 688821, at *1 (E.D. Pa. Oct. 8, 1997) (denying motion to dismiss when defendant misconstrued plaintiff's complaint). *Accord, Johnson v. New Brighton Area School Dist.*, No. 06-1672, 2007 WL 853743, at *2 (W.D. Pa. Mar. 20, 2007).

---

[1]The PPU 2000 Faculty Handbook generally recognizes AAUP policy documents as "authority in all matters covered by this Handbook." (p.1)

[2]Since, as a departmental chair, Dr. Newman was no longer covered by the terms of the CBA, the University argues that she cannot state a claim for denial of internal due process. ECF Doc. 28 at 2. Taken to its logical extreme, the University appears to argue that upon becoming a chair Dr. Newman lost the protections and privileges available to her as a tenured member of the faculty which would be absurd.

**B.**      Contrary to Defendant's claim at ECF 28, p. 6, *Williams v. Pa. Human Relations Comm'n*, 2016 WL 6834612, *17 (W.D. Pa. Nov. 21, 2016), does not support its argument that its grievance resolution against Plaintiff is not an adverse action.  *Williams* did not have a retaliation claim and was decided on summary judgment.  *Williams* merely received a counseling memo for failing to use proper call-off procedure, while Defendant's settlement of Dr. Ross' grievance against Dr. Newman was contrary to Management's contractual right to assign class instructors, and required Plaintiff under threat of discipline to assign Dr. Ross (her alleged harasser) to teach a class in her Department outside his area of expertise instead of more qualified faculty.  ECF 15, ¶¶ 352-81.  Based on these circumstances, the grievance decision was materially adverse to Plaintiff's interests and "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *See Counts v. Shinseki*, 2010 WL 3810662, at *9 (W.D. Pa. Sept. 23, 2010) (quotation omitted) (finding retrieval of employee's laptop and transfers without loss of pay constituted materially adverse decisions); *Boandl v. Geithner*, 752 F. Supp. 2d 540, 565 (E.D. Pa. 2010) (finding materially adverse action based on negative performance evaluation, performance improvement period, and threat that if plaintiff did not improve his performance he would face termination).

Plaintiff pled  under the CBA that the University has "sole discretion" to decide who teaches courses and those decisions "are not subject to challenge via the grievance procedure."  ECF 15, ¶ 372.  "As a result of Point Park's reservation of rights to decide who does the teaching, the University's agreement in favor of Dr. Ross as the Grievant and against Dr. Newman as Department Chair was contrary to the terms of the collective bargaining agreement and normal operations."  *Id.*, ¶ 373.  In other words, the grievance was invalid *ab initio* and should not have been addressed at all by the University.  *See id.*  Thus, factual issues remain why when Plaintiff was involved as the

5

University's representative the University accepted an invalid grievance and agreed that the Union could usurp the managements's bargained-for authority to decide who teaches which courses. As Plaintiff pled: "Both Dr. Ross' 'grievance' against Dr. Newman and Point Park's illogical and unsupported decision were motivated by a retaliatory or discriminatory animus, took away Dr. Newman's autonomy in assigning courses, and has affected the terms and conditions of Dr. Newman's employment as Department Chair and might have dissuaded a reasonable worker from making or supporting a charge of discrimination." ECF 15, ¶ 381.

Regarding suspension as an adverse employment action, Plaintiff pled that her removal from campus prevented occurrence of "a department meeting scheduled for October 29, 2018 whose purpose was to explain to students the difference between Social Sciences (i.e., the scientific study of human society and social relationships) and 'Social Justice' (an advocacy and activism program at Point Park led by Dr. Ross)," that is, "the perils of advocacy and activism at the University under the guise of social justice." ECF 15, ¶¶ 168, 314, 423. The Court can infer that the University deprived Plaintiff of the opportunity to address head-on faculty active in the academic and cultural boycott of Israel movement and hostile to Plaintiff who encouraged students to take harmful action against Plaintiff, and sought with administrative backing to undermine her program, courses, duties, and responsibilities.

**C.** Defendant erroneously argues at ECF 28, p. 7, that Plaintiff cannot show antagonism for purposes of a retaliatory causal link because "Plaintiff's Amended Complaint is replete with allegations that similar behavior existed well before she reported her issues with Dr. Ross and Dr. Hines." Contrary to Defendant's claim, Plaintiff's allegations support that she initially had positive relationships with them but after raising discrimination complaints against them they became

antagonistic toward her.  For example:

18.   Dr. Newman was instrumental in the hirings of Robert Ross, Ph.D. (Dr. Ross) and J. Dwight Hines, Ph.D. (Dr. Hines) and initially had good relations with them.

319.  Dr. Newman also was singled out for retaliatory treatment because she previously raised discrimination on the part of Dr. Ross and Dr. Hines.

416.  In the recent past, Dr. Newman raised complaints to the Administration against two faculty members – Dr. Ross and Dr. Hines.

417.  Dr. Newman complained to Point Park that Dr. Ross' teaching [and] scholarship are improper including, but not limited to, those that are anti-Israel and anti-Semitic.

271.  During a faculty search in or about 2014 Dr. Hines (Male/non-Jewish/sufficiently younger/U.S. born) used inappropriate sexist language about which Dr. Newman complained to the administration.

418.  Dr. Newman also complained that Dr. Hines made sexist remarks to students, and she filed a Title IX complaint of sex discrimination against Dr. A.

73.   Dr. Ross' and Dr. Hines' activism persisted into 2018 as did their animosity towards Dr. Newman.

421.  Following these activities, Point Park took materially adverse actions against her.

Based on these averments, the Court can infer that the antagonism by Drs. Ross and Hines

started after she had complained about their discriminatory actions.  *See Holt v. Pennsylvania*, 2014

WL 4055864, at *3 (E.D. Pa. Aug. 14, 2014).

**D.**      Contrary to Defendant's argument at ECF 28, p. 8, Plaintiff's hostile work environment

claims do not "boil down her to disagreement with Dr. Ross' teachings and beliefs regarding the

Israel-Palestine conflict...."   In the Amended Complaint, Plaintiff alleges that she was targeted

because she is Israeli and a Jew, and harassed and mistreated because of her gender.[3]  ECF 15, ¶¶

---

[3]Gendered hostile actions include a male faculty member raging at Plaintiff, "We don't give a shit about what you think," when she started to express her views on academic issues.  He would not have said this to a man.  265-68.  It also includes the incident on December 21, 2017,

56, 232-33, 315, 318, 387, 399, 405, 409, 501, 512.  The attacks were led by faculty active in the academic and cultural boycott of Israel movement and hostile to Plaintiff who encouraged others to take action in support of their cause and against Plaintiff.  *See e.g. id.*, ¶¶ 19-33, 40-46, 228-31, 328-31, 343, 391.  A female student actively involved in BDS falsely accused Plaintiff of a Title IX violation with the assistance of these pro-BDS faculty.  *Id.*, ¶¶ 79-83, 92, 112, 216-18, 329-31.  Current and former activist students took to Facebook to drum up negative information about Plaintiff to provide to the Title IX investigator.  *Id.*, ¶¶ 187-215, 406.  The false Title IX complaint was used by the University as a pretext to effect the terms and conditions of Plaintiff's employment including her unprecedented suspension for 7 weeks in the middle of the semester, but males accused of Title IX violations were never suspended, her removal as Department Chair and replacement with a male, cancellation of her course the next semester, and  funneling enrolled students to the course taught by the same pro-BDS male professor hostile to her.  *Id.*, ¶¶ 131-32, 254, 261, 267-68, 270.  Courts have recognized an employer's or co-worker's efforts to undermine the plaintiff's

---

when Dr. Newman was subjected to a bullying incident by Dr. A.  He burst into her office, displayed explosive anger, said that she must give up her office to him and she would "lose" academic power and responsibility, which actions she found physically menacing and caused her distress and fear.  *Id.*, ¶¶ 248-251.  The atmosphere at Point Park was sexually hostile including that Dr. Hines made sexually inappropriate comments.  *Id.*, ¶ 268, 271.  In contrast to Plaintiff, males accused of Title IX violations including by Plaintiff (*e.g.*, Dr. A. and Dr. Hines) were not suspended pending investigation, did not have any duties removed from them, did not have any of their classes cancelled, nor received such mistreatment as she.  *Id.*, ¶ 502.  Point Park's rebuffing of Plaintiff's complaints against male aggressors supports a hostile work environment.  *Ingram v. Vanguard Grp., Inc.*, 2015 WL 4394274, at *20 (E.D. Pa. July 17, 2015) (ignored complaints of discriminatory treatment supported ruling that harassment was sufficiently severe or pervasive to survive motion to dismiss).  Other hostile actions taken against Plaintiff contribute to a hostile environment even though the conduct may not be sexual in nature.  *See Andrews v. City of Phila.*, 895 F.2d 1469, 1485 (3d Cir. 1990) ("To constitute impermissible discrimination, the offensive conduct is not necessarily required to include sexual overtones in every instance or that each incident be sufficiently severe to detrimentally affect a female employee").

performance as a form of hostility.  *See Zelinski v. Pa. State Police*, 108 Fed. Appx. 700, 705 (3d

Cir. 2004) (male police officer's refusal to provide protection for a female officer during undercover

operation could be severe or pervasive harassment); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139,

146 (3d Cir. 1999) (firm contributed to a hostile work environment by firing an insurance agent's

secretary, taking away her private office, and failing to provide needed legal support).

Defendant failed to conduct a timely investigation into Plaintiff's formal discrimination

complaint against the male pro-BDS faculty and some of their students.  ECF 15, ¶¶ 234-36; 278-81.

Thereafter, the student newspaper published an article highly critical of Plaintiff improperly faulting

her for her removal from class under suspicion of a Title IX violation citing Provost Prida and

anonymous students who complained of being cheated financially.  *Id.*, ¶¶ 289-95.  Several students

filed yet another Title IX complaint against Plaintiff.  *Id.*, ¶¶ 301-12.  An anonymous student posted

a racist and sexist Rate My Professor message that falsely stated that Plaintiff "showed videos calling

Muslims savages who are destroying western civilization in a language class to educate us."  *Id.*, ¶

287.  As Chair, Plaintiff continues to be undermined by the Administration and shunned by students

and faculty which appears coordinated, and negatively impacts her duties and decisions for advising,

scheduling, curriculum, degree completion, and interacting with students.  *Id.*, ¶¶ 294-97, 322-27,

334-40.  Provost Pearson told Plaintiff that he wanted to help, but does not know what to do, and

"wanted to quit over all this."  *Id.*, ¶¶ 339-40.  Now students in her class were highly disrespectful

to her, and her enrollments have decreased dramatically which negatively effected her.  *Id.*, ¶ 325.

Defendant terminated the mediation session alleging Plaintiff again was under investigation for some

undisclosed reason.  *Id.*, ¶¶ 347-51.  Dr. Ross brought a bad faith grievance against Plaintiff, which

Defendant inexplicably sustained, and resulted in Plaintiff having to assign him a course in her

Department outside his area of expertise.  *Id.*, ¶¶ 353-81.  These allegations reflect a hostile work environment and not some mere academic disagreement.  *See Zelinski*, 108 Fed. Appx. at 705; *Evans*, 166 F.3d at 146.

**E.**     Plaintiff respectfully requests this Court to exclude the "Adjunct Faculty Handbook" submitted by Defendant (ECF 28, p. 9; ECF 28-1) as outside the scope of pleadings.  "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citations omitted).

Plaintiff's Academic Freedom claim is not based on the Adjunct Faculty Handbook, which she never cited.  *See* ECF 15, ¶¶ 116-17, 386, Count XIV, ¶¶ 560-71.  Plaintiff alleged that the Academic Freedom policy afforded her freedom both in the classroom to discuss her subjects and outside the classroom when she spoke as a citizen, and that Defendant violated that policy when it disciplined her based on statements she made in class about the Me Too Movement, outside the class to the complainant, and that Dr. Ross' teaching and scholarship constituted improper advocacy, was not scholarly, and was anti-Israel and anti-Semitic.  *See id.*  Because Plaintiff's Academic Freedom claim is not based on the Adjunct Faculty Handbook and that document is outside the scope of the pleadings, it should be excluded and not weighed as Defendant now seeks.  *See Schmidt*, 770 F.3d at 249 (district court erred in considering certain documents attached to defendants' Rule 12(b)(6) motions).

**F.**     Contrary to Defendant's argument, Plaintiff does not rely on either the CBA or Adjunct Faculty Handbook to support her breach of academic freedom claim.  ECF 15, ¶ 115, 568, Count XIV.  *Dykes v. Southeastern Pennsylvania Transportation Authority*, 68 F.3d 1564, 1567 n. 3 (3d

Cir.1995), stated that a court may consider a collective bargaining agreement attached to a defendant's motion to dismiss if the plaintiff's claims are based on that document.  However, Plaintiff's academic freedom claim is based on Point Park's communication to Plaintiff of the Academic Freedom policy which she accepted by continuing performance of her duties.  ECF 15, ¶¶ 563-66.  As a result, the Court should not consider those documents nor grant Defendant's motion to dismiss.  *See Davies By & Through Davies v. Lackawanna Cty.*, No. 3:15-CV-1183, 2017 WL 1027585, at *6 (M.D. Pa. Mar. 16, 2017) ("At the pleading stage, the Court will not determine the applicability of a collective bargaining agreement that was not attached to or referenced in the Complaint").

**G.**    Defendant mistakenly cites to *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296 (3d Cir. 2004), and *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831 (3d Cir. 2016), regarding Defendant's breaches of the Title IX (Count XIII) and Policy Prohibiting Sexual Misconduct, Relationship Violence and Stalking (Count XVI).  Those cases were decided on summary judgment after the opportunity to take discovery.  Contrary to Defendant's argument, Plaintiff does not rely on her discrimination /retaliation allegations to support these claims.  She  pled cognizable claims citing to breaches of specific provisions of these Policies relating to interim measures, scope of a Title IX complaint, risk assessment, timeliness of the investigation and appeal, confidentiality, etc.  ECF 15, ¶¶ 97-100, 132-33, 140-55, 157-84, 220-21, 273, 299, 313, 557, 585-91.  Other breaches involve Defendant's stark failure to use the Informal Resolution process available under its Title IX policy when as here the reported behavior could not constitute a crime.  *See* ECF 18-3, p. 21.  On October 16, 2018, Point Park placed Dr. Newman on indefinite suspension for an alleged Title IX violation without ever discussing the matter with her or even bringing the complaint to her attention, and no informal

resolution was attempted.

Regarding the "Title IX Notice of Nondiscrimination" document submitted by Defendant, 18-2, Plaintiff disputes that this is the entire Title IX policy; in fact, there are links in that document incorporating other items including Point Park's "Title IX: Policy Prohibiting Sexual Misconduct, Relationship Violence, and Stalking," and "Title IX: Frequently Asked Questions." Plaintiff should be able to take discovery regarding the full extent of Point Park's Title IX policy and not have her claim dismissed based on the incomplete version submitted by Defendant.

**H.**     Defendant wrongly argues that Dr. Ross' alleged mistreatment was not "individualized" but "related to her association with Israel." ECF 28, p. 17. Plaintiff clearly pled that she was targeted by Dr. Ross because she is Israeli and a Jew, as well as her gender. ECF 15. The allegations show that mistreatment was motivated by animosity against her individually, and not that Dr. Ross would have mistreated a different person who happened to be in the same position as Plaintiff. *See Price v. Phila. Elec. Co.*, 790 F. Supp. 97, 100 (E.D. Pa. 1992) ("the relevant inquiry for determining whether the exception is applicable centers on the motivation or intent of the third party. Viewing the allegations in the complaint in the light most favorable to plaintiffs, it cannot be said that the conduct alleged clearly was not a result of personal animosity of fellow employees toward Ronald Price").

Defendant's reliance on *Kovach v. Turner Dairy Farms, Inc.,* 929 F. Supp.2d 477, 497 (W.D. Pa. 2013), is misplaced. The Court rejected employer's argument that plaintiff's negligent supervision claim was barred by the Worker's Compensation Act based on the "personal animus" exception. Plaintiff alleged a co-worker attempted to injure him for purely personal reasons, and the Court found that "the viability of this Count turns on [the co-worker's] motivation, an inherently

12

factual determination." *Id.*, 929 F. Supp. 2d at 496.  Kovach did not involve any hostile work environment or retaliation claims under anti-discrimination laws, as is present here but brought claims, *inter alia*, against his Union for interference with his free speech rights under the Labor-Management Reporting and Disclosure Act.  *Id.*, 929 F. Supp. 2d at 489-91.

**I.**     Contrary to Defendant's argument at ECF 28, p. 16, the Court can infer that McClelland's failure to investigate Plaintiff's report that a student had been raped would result in harm to Plaintiff's reputation, cause Plaintiff cognizable emotional distress, and result in Plaintiff experiencing out of pocket costs.  Plaintiff twice contacted McClelland because a student reported rape during class, but the calls were ignored.  ECF 15, ¶¶ 152-53, 612-16.  This shows negligence and a failure to implement Title IX procedures.  The process was mishandled at every step and led to Plaintiff's damages.  *Id.*, ¶¶ 105,155, 169.  Plaintiff also alleged that McClelland talked about her "little Jewish" college roommate being afraid of everything (conveying an anti-Semitic stereotype) during a staff meeting and joked with others including Dr. Hines about Dr. Newman's suspension. *Id.*, ¶ 154.

**J.**     Point Park speciously argues that "[n]othing in the Mediation Agreement placed a duty on Point Park to enter into a resolution with Plaintiff regarding her Charge of Discrimination."  That is not Plaintiff's claimed violation.  The Agreement required Point Park to participate in good faith[4] and that subsequent sessions will held only if the Parties agreed they "are reasonably likely to be productive and successful."  ECF 18-4.  Moreover, the "Parties attending the mediation will have proper authority to settle the disputes," (*Id.*), which PPU lacked on September 25, 2019.  Plaintiff

---

[4]In Pennsylvania, the duty of good faith and fair dealing is implied in every contract. *Hordis v. Cabot Oil & Gas Corp.*, 2020 WL 2128968, at *4 (M.D. Pa. May 5, 2020).

and her counsel appeared and wanted to participate in that mediation session, but Point Park menacingly breached due to an undefined new investigation of Dr. Newman leading to damages. ECF 15, ¶¶ 594-602.

The unusual and unnecessary harshness of Point Park's behavior towards its long-term high-performing employee including implementing formal investigation, suspension and refusal to mediate when the matter arguably should have been resolved informally and mediated per agreement suggests discriminatory animus, and a desire to damage Dr. Newman.   Unusual, unequal, unnecessary, or severe treatment of a protected class member reflects discrimination.   *See e.g. Privotto v. Innovative Sys., Inc*, 191 F.3d 344 (3d Cir. 1999); *Martinelli v. Penn Miller Ins. Co.*, WL 2100695 at *9 (M.D. Pa. Aug. 29, 2005).

**K.**      It is respectfully submitted that the Court should allow discovery and direct filing of an answer.  In general, "fact-intensive issue[s] [are] inappropriate for resolution at the motion to dismiss stage, where no factual record has yet been developed."   *Fiedler v. Stroudsberg Area School Dist.*, 427 F. Supp 3d 539, 558 (M.D. Pa 2019) (quoting *Miller v. Helm*, No. 17-1590, 2017 WL 6405738, at *7 (M.D. Pa Dec. 15, 2017)).   *See also Popa v. Harriet Carter Gifts, Inc*., 426 F. Supp. 3d 108, 116 (W.D. Pa. 2019).   As set forth above and in ECF 24, 25, 30, and 31, Point Park prematurely placed factual arguments and materials before the Court.   It submitted 6 exhibits totaling over a hundred pages including contracts and policies that it wishes the Court to weigh against Plaintiff. In effect, Defendant already has moved for summary judgment without allowing Plaintiff to develop a factual record.

The University has yet to file a responsive pleading addressing the serious and extensive matters in the Amended Complaint.  This failure is prejudicial and renders it difficult for a Court to

assess the substantive aspects of the Plaintiff's claims.  *See e.g. Heck v. Frame,* No.  92-1193, 1992

WL 176498, at *2 (E.D. Pa. Jul 16, 1992); *Robinson v. Johnson*, 313 F.3d 128, 134-5 (3d Cir. 2002).

Moreover, without providing express notice in an Answer, Defendant indirectly raised affirmative

defenses including that Plaintiff's faculty rights are controlled by third party agreements (CBA and

Adjunct Faculty documents); that Plaintiff somehow agreed to Defendant being able to back out of

mediation; that her claims as pre-empted by § 301 of the LMRA (ECF 19, p. 27) when federal

preemption is an affirmative defense, *Bedoya v. Am. Eagle Express, Inc.*, 914 F 3d 812, 817 (3d Cir.

2019), and that Dr. Newman failed to exhaust administrative remedies (ECF 19, p. 17).  5 FED PRAC.

& PROC. §1271 (2020) (failure to exhaust administrative remedies may also be an affirmative

defense).  It is respectfully requested that the Court allow discovery and direct the filing of an

answer.

## II. CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety

and/or the proceedings should be converted to a Motion for Summary Judgment.

Respectfully submitted,

s/James B. Lieber
James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
Jacob M. Simon
Pa. I.D. No. 202610
LIEBER HAMMER HUBER & PAUL, P.C.
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (telephone)
(412) 687-3140 (fax)
Counsel for Plaintiff Channa Newman

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2020, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification of such filing to the following:

<br>

Catherine S. Ryan (PA 78603)
cryan@reedsmith.com
David J. McAllister (PA 36729)
dmcallister@reedsmith.com
Mariah H. McGrogan (PA 318488)
mmcgrogan@reedsmith.com
Reed Smith LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Counsel for Defendant

<br>

s/James B. Lieber
James B. Lieber
Counsel for Plaintiff