**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHANNA NEWMAN,<br>               Plaintiff,<br><br>     vs.<br><br>POINT PARK UNIVERSITY,<br>               Defendant. | )<br>)<br>)<br>)  Civil Action No. 2:20-cv-00204-MRH<br>)<br>)<br>) |

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S MORE DEFINITE STATEMENT**

Defendant Point Park University submits this Response to Plaintiff's More Definite Statement, as it pertains to Count 19 of the Amended Complaint. For the reasons set for the below, the Count (as modified by the More Definite Statement) should be dismissed.

### I.  Introduction

As observed by this Court, "[l]iability for intentional infliction of emotional distress 'has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Ghrist v. CBS Broadcasting, Inc.*, 40 F. Supp. 3d 623, 630 (W.D. Pa. 2014) (J. Hornak) (quoting *Reedy v. Evanson*, 615 F.3d 197, 231–32 (3d Cir. 2010) (citation omitted)). Due to this high bar, the Pennsylvania courts only find viable IIED claims based on "the most egregious conduct." As stated by the Supreme Court of Pennsylvania in *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998): "Described another way, 'it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.'" (internal citation omitted). As such, as stated by the Third Circuit in *Cox v. Keystone Carbon*, 861 F.2d

390, 395 (3rd. Cir. 1988):  "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."

Illustrative examples include:  (i) *Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970) where the defendant struck and killed the plaintiff's son and then buried the body in a field where it was discovered two months later and returned to parents; and (ii) *Banyas v. Lower Bucks Hospital*, 437 A.2d 1236 (Pa. 1981), where the defendants' fabrication of records to suggest that the plaintiff had killed a third party led the plaintiff being indicted for homicide.  Plaintiff's allegations do not even approach the level of atrocity of these cases and what the courts repeatedly find lacking in virtually all attempts to state such an IIED claim.

II. **Plaintiff's allegations fall far short of the legal standard.**

At the outset, Plaintiff's description of herself as "a dignified, private and moral person [who was] then 75 years old" and a purported "Holocaust survivor" (*See* ECF No. 38, at ¶¶ 62, 71) can and should have no bearing whatsoever in assessing the sufficiency of the complained of conduct.  Rather, the legal standard is an objective one, and the conduct must be "atrocious[] and utterly intolerable in a civilized *society*" -- not merely to Plaintiff.  *See Hoy*, 720 at 754 (emphasis added).  And, "[i]t is the court's responsibility to determine if the conduct alleged in a cause of action reaches the requisite level of outrageousness." *Cox*, 861 F.2d at 395.

We now address Plaintiff's allegations, which fall into a handful of buckets.

A. **Point Park's alleged employment decisions are not "extreme and outrageous"**

The Pennsylvania courts have repeatedly held that an employment termination, including under discriminatory and retaliatory circumstances, is not sufficiently "extreme and outrageous" to survive a motion to dismiss an IIED claim.  As the Third Circuit observed in *Garges v. People's Light & Theatre Co.,* 529 Fed. Appx. 156, 163 (3d Cir. 2013):  "The conduct alleged concerning

the termination and the events leading up to it was unexceptional. Even the allegations in the second amended complaint - that the Theatre told Garges' relatives that she was suicidal and mentally ill, and that the defendants tried to destroy her reputation and career, and/or drive her to suicide - are not extreme enough to make out a claim for intentional infliction of emotional distress." See *Spangler v. Moderne Glass Co., Inc.*, Civil Action No. 06-1394, 2007 WL 710266, at *3 (W.D. Pa. Mar. 6, 2007) (granting motion to dismiss IIED claim where employee alleged she was discriminated against and terminated due to her disability and age); *Parker v. DPCE, Inc.*, Civ. A. No.. 91-4829, 1992 WL 501273, at *13-14 (E.D. Pa. Nov. 3, 1992) (granting motion to dismiss IIED claim where employee alleged he was subject to physical assault, racial slurs, and a racially discriminatory and retaliatory termination).

An involuntary employment termination is, in the employment world, the equivalent of capital punishment. If a termination is insufficient to support an IIED claim, then employment actions short of that such as those relied upon by Plaintiff – Point Park's internal investigations related to student complaints against Plaintiff; her administrative paid leave; actions taken during her administrative paid leave, including being escorted by a security guard to her office and assigning faculty members to cover her job responsibilities; removal of GCS Coordinator role; moving the Social Justice program to a different department; Point Park allowing student and faculty course substitutions and faculty sabbaticals without her approval; Associate Provost overseeing a meeting between Plaintiff and a student; and requiring Plaintiff to change a course title -- certainly do not meet the applicable legal standard. Even taking these employment actions as true in the light most favorable to Plaintiff, none of these actions amounts to anything more than "mere insults, indignities…annoyances, petty oppressions, or other trivialities," which is woefully insufficient to state an IIED claim. *See Snyder,* 658 A.2d at 375 (internal citation omitted); *see*

*also Rouse v. II-VI, Inc.*, No. 2:06-cv-566, 2007 WL 1007925, at *15 (W.D. Pa. Mar. 30, 2007), *aff'd*, No. 08-3922, 2009 WL 1337144 (3d Cir. May 14, 2009) (granting motion to dismiss where employee alleged that employer discriminated against her on the basis of her race and age, excluded her, and had her escorted by security from the workplace).

Further, courts routinely dismiss IIED claims based on conduct that occurred during an internal employment investigation, even where the employee alleges inadequate or entirely false basis. *See Romig v. Northampton Cty. Dep't of Corr.*, Civil Action No. 06-CV-05309, 2008 WL 818798, at *9 (E.D. Pa. Mar. 21, 2008) (dismissing IIED claim where employee alleged employer induced co-workers to lie and make false reports against employee during internal investigation). In *Kortyna v. LaFayette College,* 47 F. Supp. 3d 225 (E.D. Pa. 2014), a motion to dismiss an IIED claim was granted on allegations strikingly similar to those made by Plaintiff.  There, the faculty member claimed that he was unfairly and selectively prosecuted for students' sexual misconduct claims that "did not fit within the Faculty Handbook's definition of sexual harassment." *Id.* at 243-44.   The district court found that such actions could never meet the level of outrageousness required for an IIED claim. .

> **B.     Plaintiff's discrimination, hostile work environment, and retaliation allegations are not "extreme and outrageous"**

A second bucket is Plaintiff's generalized allegations of discrimination, hostile work environment, and retaliation.   These also fall woefully short of the extreme and outrageous standard necessary.  *See* ECF No. 38, at ¶¶ 60, 62-66, 68, 74.  Indeed, courts routinely dismiss such attempts to create an IIED claim. *See Thompson v. AT&T Corp.*, 371 F. Supp. 2d 661, 684 (W.D. Pa. 2005) (noting that while discrimination "is certainly rude and unacceptable behavior… such actions do not equate with the extreme and outrageous conduct necessary to maintain an action for intentional infliction of emotional distress"); *Hasan v. Threshold Rehab., Inc.*, Civil

Action No. 13-cv-00387, 2014 WL 1225921, at *8 (E.D. Pa. Mar. 25, 2014) (dismissing IIED claim where employee alleged she was discriminated against on the basis of her race, national origin, and religion); *Mandel*, 2009 WL 2579308, at *6 (dismissing IIED claim where employee alleged she was subject to sexual harassment and retaliation); *DiFlorio v. Nabisco Biscuit Co.,* No. CIV.A. 95-0089, 1995 WL 295367, at *4 (E.D. Pa. May 12, 1995) (dismissing IIED claim where employee alleged she was subject to sexual harassment and retaliation and employer failed to take action against employees who sexually harassed her).

> **C.   Point Park's alleged failure to resolve Plaintiff's employment dispute and resolution of a faculty grievance are not "extreme and outrageous"**

Further underlying Plaintiff's failure to state a viable IIED claim is the third bucket of allegations, *to wit*, that Point Park intentionally inflicted emotional distress upon her when it allegedly stopped participating in mediation and did not agree to resolve her employment dispute due to a recently filed internal complaint. *See* ECF No. 38, at ¶¶ 94-100. The alleged "atrocities" suffered by Plaintiff included "s[itting] in Point Park's lawyer's offices for hours" and being worried about the newly filed complaint. *See id.*, at ¶¶ 96, 98-99. There is no question that Point Park's alleged conduct is neither extreme nor outrageous, and is at best, a "mere…annoyance," which the Pennsylvania courts have repeatedly held is insufficient to state an IIED claim. *See DiFlorio,* 1995 WL 295367 at *5 (granting motion to dismiss IIED claim and noting that refusal to let employee use restroom at work was nothing more than an example of "indignities, annoyances, and petty oppressions.") (internal citation and quotations omitted).

So, too, Point Park's resolution of a faculty grievance against Plaintiff is insufficient to state an IIED claim. *See* ECF No. 38, at ¶¶101-02. Indeed, Point Park's resolution merely required Plaintiff to assign a Sociology course to a faculty member. *See id.* Such trivial employment decisions could never be sufficiently "extreme and outrageous" to form the basis for an IIED claim.

*See Dart v. Cty. of Lebanon*, Civ. No. 13-CV-02930, 2014 WL 4792135, at *11 (M.D. Pa. Sept. 23, 2014) (granting motion to dismiss IIED claim where employee alleged supervisor subjected her to demeaning comments and demanded her resignation).

### D. Faculty members' advocacy of the BDS movement is not "extreme and outrageous"

A fourth bucket – and one directly at odds with her allegations that Point Park purportedly breached principles of Academic Freedom – is Plaintiff's allegations that Dr. Ross and Dr. Hines' advocacy of the Boycott, Divestment, and Sanctions (BDS) movement amount, ***from Plaintiff's perspective***, to be anti-Semitic and anti-Israeli. *See* ECF No. 38, at ¶¶61, 67, 79, 81, 84. Were the holding of different points of view or political opinions enough to state an IIED claim, the courts would be inundated with them. Nothing under the applicable law sanctions the use, as sought by Plaintiff, of an IIED claim to silence those with whom she disagrees. *See Geary v. Visitation of Blessed Virgin Mary Par. Sch.*, Civ. A. No. 92-5769, 1992 WL 392599, at *2 (E.D. Pa. Dec. 18, 1992), *aff'd in part, vacated in part on other grounds*, 7 F.3d 324 (3d Cir. 1993) (dismissing IIED claims where employer terminated employee's employment for entering into a canonically invalid marriage in violation of the tenants of the Catholic church).

While Plaintiff claims she "believed and feared that BDS…wanted her not to return to the University," the standard is not a subjective one and, in any event, these fears are insufficient to form the basis for an IIED claim, particularly where Plaintiff continues to work at the University. *See id.* at ¶ 81. In any event, the courts have routinely held that "[w]rongful and even malicious interference with employment is not sufficiently outrageous, atrocious or intolerable to sustain an intentional infliction of distress claim." *See McClain v. Munn*, C.A. No. 06-278, 2008 WL 975059, at *5 (W.D. Pa. Apr. 9, 2008) (dismissing IIED claim of employee who alleged that he was falsely accused of crimes in retaliation for report). Indeed, the Pennsylvania courts have granted motions

to dismiss where the plaintiffs alleged they were falsely accused of crimes or workplace misconduct and subject to malicious treatment during internal investigations for this reason. *See id.*; *Romig*, 2008 WL 818798, at *9 (E.D. Pa. Mar. 21, 2008) (dismissing IIED claim where employee alleged employer induced co-workers to lie and make false reports against employee during internal investigation).

At bottom, Plaintiff's allegations regarding faculty members and the BDS movement are simply insufficient to form the basis of an IIED claim.

### E. Point Park students' complaints and treatment of Plaintiff are not "extreme and outrageous"

Plaintiff further alleges that Point Park students shunned her and targeted her by publishing false newspaper articles, filing internal Title IX complaints against her, and posting an anonymous comment on the website Rate My Professor stating that Plaintiff "showed videos calling Muslims savages who are destroying western civilization in a language class to educate us." *See* ECF No. 38, at ¶¶63, 88-91. As preliminary matter, there is no legal basis for vicarious liability based on an anonymous student posting a comment on a website over which Point Park has no control. Further, none of these actions are sufficiently "extreme and outrageous" to support an IIED claim.

As noted above, "[w]rongful and even malicious interference with employment is not sufficiently outrageous, atrocious or intolerable to sustain an intentional infliction of distress claim." *See McClain*, 2008 WL 975059, at *5. Even making knowingly false internal complaints and statements and attempting to destroy an employee's career and reputation is routinely held to be insufficient to support a viable IIED claim. *See Garges*, 529 Fed. Appx. at 158; *McClain*, 2008 WL 975059, at *5; *Romig*, 2008 WL 818798, at *9. Accordingly, Plaintiff's allegations regarding students' actions against her fails as a matter of law.

### III.     Plaintiff's IIED claim is barred by the Workers' Compensation Act.

As previously addressed in Point Park's supporting briefs to its Motion to Dismiss the Amended Complaint, the Pennsylvania Workers' Compensation Act's exclusivity provision, 77 P.S. § 418(a), bars claims for "intentional and/or negligent infliction of emotional distress [arising] out of [an] employment relationship." *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997) (*abrogated on other grounds by Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999)) (internal quotation and citation omitted).

Plaintiff's More Definite Statement confirms that she is solely relying on actions which indisputably arose out of the employment relationship.  Indeed, Plaintiff primarily relies upon alleged employment-related decisions made by Point Park to support her IIED claims.  *See* ECF No. 38, at ¶¶ 63, 69-80, 84-87, 90-103.

Plaintiff's remaining allegations relate to actions taken by faculty members and students, which all occurred within the scope and context of her employment as a faculty member and Department Chair.  *See id.* at ¶¶ 61-62, 63, 65-68, 79-81, 92.  There are no allegations that faculty members took any actions against Plaintiff outside of work or unrelated to her employment with the University.  Similarly, her allegations against Point Park students all relate to students' treatment (or, really, opinions) of her at work and student complaints regarding Plaintiff's classroom conduct and her treatment of students in her role as a professor.  *See id.* at ¶¶ 63, 67-68, 77, 88-90, 92.

Because Plaintiff pleads only actions that occurred within the scope of her employment relationship with Point Park, her IIED claim is barred under the Workers' Compensation Act.  *See Johnson v. Autozone,* Civil Action No. 16-1194, 2018 WL 2301844, at *4 (W.D. Pa. May 21, 2018) (dismissing IIED claim where employee alleged unequal treatment of black employees in the workplace); *Lassiter v. Children's Hosp. of Philadelphia*, No. CIV.A. 05-CV-6834, 2008 WL

304891, at *14 (E.D. Pa. Jan. 31, 2008) (dismissing IIED claim where all conduct arose out of the work context).

### IV.     Conclusion

For the foregoing reasons, in addition to those stated in its Motion to Dismiss and supporting Brief, Point Park requests that this Court dismiss Plaintiff's intentional infliction of emotional distress claim in Count 19 of the Amended Complaint, as modified by the More Definite Statement, with prejudice.

/s/ David J. McAllister
Catherine S. Ryan (PA 78603)
cryan@reedsmith.com
David J. McAllister (PA 36729)
dmcallister@reedsmith.com
Mariah H. McGrogan (PA 318488)
mmcgrogan@reedsmith.com
Reed Smith LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA  15222
Phone:  (412) 288-4226/3058/3152
Fax:     (412) 288-3063

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 17, 2020, a true and correct copy of the foregoing *Defendant's Response to Plaintiff's More Definite Statement* was filed electronically with the Court. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system, and the parties may access this filing through the Court's system.

>  */s/ David J. McAllister*
>  *Attorney for Defendant*

US_ACTIVE-154341900.6-CETHROCK 07/17/2020 4:29 PM